HAROLD HEINS *vs.* WILHELM LOH WETZLAR OPTICAL
MACHINERY GMBH & CO. KG.

No. 87-193.

Worcester.  January 21, 1988. — May 11, 1988.

Present: PERRETTA, CUTTER, & WARNER, JJ.

*Jurisdiction*, Nonresident, Long-arm statute. *Due Process of Law*, Jurisdiction over nonresident. *Negligence*, Manufacturer.

In a tort action brought on theories of negligent design and manufacture and breach of warranty, the plaintiff did not demonstrate a rational nexus between his cause of action and the transaction of any business by the nonresident defendant in Massachusetts such that personal jurisdiction would attach under G. L. c. 223A, § 3 (*a*), in circumstances where the allegedly defective machine that caused the plaintiff's injury was purchased by the plaintiff's Massachusetts employer from an Illinois corporation in Illinois that was the exclusive United States distributor of such machines and that bought the machines for resale from a Swiss corporation in Switzerland that, in turn, had bought the machines outright from the defendant West German manufacturer. [16-19]

The plaintiff in a civil action who alleged he suffered a tortious injury in Massachusetts arising out of a machine's alleged negligent design and manufacture in West Germany, established sufficient facts to support the assertion of personal jurisdiction over the West German manufacturer under G. L. c. 223A, § 3 (*d*), where evidence of the sale price of the machine in question and of the presence of many other of the defendant's machines in Massachusetts permitted the inference that the defendant "derives substantial revenue" from the use of its machines in the State. [19-21]

Discussion of the Federal due process considerations that arise in connection with a State's assertion of personal jurisdiction over a nonresident corporate defendant. [21-24]

A corporate defendant that was aware that machines it manufactured had been purchased by Massachusetts customers for use in Massachusetts, that acted directly to serve the Massachusetts market for those machines, and that derived substantial revenue from the use of its machines in Massachusetts had sufficient minimum contacts brought about by its purposeful acts directed toward Masssachusetts, so that the assertion of specific personal jurisdiction over it by Massachusetts courts was consonant with due process. [25]

26 Mass. App. Ct. 14                                               15

Heins *v.* Wilhelm Loh Wetzlar Optical Machinery GmbH & Co. KG.

In the circumstances of a tort action brought by an individual plaintiff against a West German corporation for injuries caused in Massachusetts by an allegedly defective machine manufactured by the defendant in West Germany, the assertion of specific personal jurisdiction was consonant with "fair play and substantial justice" in circumstances where the defendant had sufficient minimal contacts with Massachusetts and made no claim that it would be unduly burdened by defending in Massachusetts, and where the assertion of jurisdiction served the plaintiff's interest in obtaining convenient and effective relief as well as the interests of the Commonwealth in furthering its social policies embodied in its rules of law governing products liability actions. [25-27]

CIVIL ACTION commenced in the Superior Court Department on February 2, 1983.

The case was heard by *Barbara J. Rouse, J.*, on a motion to dismiss.

*William D. Jalkut* for the plaintiff.

*Patricia L. Kelly* for the defendant.

WARNER, J. The plaintiff appeals from a judgment entered in the Superior Court, pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), dismissing his action for lack of personal jurisdiction over the defendant. See Mass.R.Civ.P. 12(b)(2), 365 Mass. 755 (1974).

The defendant is a West German corporation which designed and manufactured an optical lens grinding machine purchased by the plaintiff's employer, a Massachusetts corporation. The plaintiff, on theories of negligent design and manufacture and breach of warranty, sought damages for injuries sustained by him while setting up the machine in Sturbridge, Massachusetts.

On the defendant's motion to dismiss under rule 12(b)(2), the parties submitted affidavits, answers to interrogatories and excerpts of the deposition testimony of the plaintiff. After argument, the judge filed a memorandum of decision and order and allowed the motion.

As he did before the Superior Court, the plaintiff argues on appeal that assertion of jurisdiction is authorized by certain provisions of our long arm statute (G. L. c. 223A) and is consistent with basic due process requirements. In particular, as to the statutory ground, the plaintiff says that the exercise

of personal jurisdiction over the defendant is proper under either of the following two provisions of G. L. c. 223A, § 3, as amended by St. 1969, c. 623: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth; [or] . . . (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth."

"General Laws c. 223A, § 3 cannot authorize jurisdiction which is constitutionally unacceptable, even though the fact pattern asserted in support of jurisdiction apparently satisfies the statute's literal requirements. Likewise, G. L. c. 223A, § 3, asserts jurisdiction over the person to the constitutional limit [see 'Automatic' Sprinkler Corp. v. Seneca Foods Corp., 361 Mass. 441, 443 (1972)] only when some basis for jurisdiction enumerated in the statute has been established." *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 6 (1979). The inquiry is twofold. We look first to see whether the plaintiff has satisfied his burden of establishing sufficient facts to support the assertion of personal jurisdiction over the defendant under the long arm statute. See *id.* at 3; *Carlson Corp.* v. *University of Vermont*, 380 Mass. 102, 105 (1980). In resolving the issue, we accept as true only the uncontroverted facts as they appear in the materials which were before the Superior Court judge. See *id.* at 104 n.4; *C.H. Babb Co.* v. *A.M. Mfg. Co.*, 14 Mass. App. Ct. 291, 293 (1982).

1. The plaintiff first contends that his cause of action arises out of the defendant's transaction of business in Massachusetts and, therefore, personal jurisdiction attached under G. L. c. 223A, § 3(a). The focus of the plaintiff's argument, as well as of the defendant's, is blurred by a mix of considerations relevant to the statutory standard and those relevant to due process requirements. See *Good Hope Indus., supra* at 6-7, and cases cited; *Bond Leather Co.* v. *Q.T. Shoe Mfg., Co.*, 764 F.2d 928, 932 (1st Cir. 1985). The inquiry, however, under

G. L. c. 223A, 3(*a*), is confined by the statutory language, although the "transacting any business" clause has been construed broadly. See *Good Hope Indus.*, *supra*; *Nova Biomedical Corp.* v. *Moller*, 629 F.2d 190, 193-194 (1st Cir. 1980). "General Laws c. 223A, § 3(*a*), gives rise to jurisdiction if the defendant either directly or through an agent transacted any business in the Commonwealth, *and if the alleged cause of action arose from such transaction of business*" (emphasis supplied). *Good Hope Indus.*, *supra* at 6.

The facts, as found by the judge and supplemented by uncontroverted statements in the materials before her, which relate to the defendant's transaction of business in Massachusetts are as follows. The defendant is a West German corporation with a principal place of business in West Germany, engaged in the design, manufacture and sale of optical machinery. Sales of the defendant's machines in the United States are accomplished in the following manner. The defendant sells its machines outright to Loh Optikmaschinen, a Swiss corporation with a principal place of business in Switzerland which manufactures and trades in optical machinery. Loh Optical Machinery, Inc. (Loh Optical), an Illinois corporation with a principal place of business in Illinois, is the exclusive distributor of the defendant's machines in the United States. Loh Optical purchases machines directly from Loh Optikmaschinen for resale to United States customers. The defendant has no control over or ownership interest in Loh Optical. The defendant does not have any control over the marketing, price or sales of its machines in the United States.[1]

The plaintiff's employer inquired of Loh Optical regarding purchase of the machine which allegedly caused the plaintiff's injuries. The plaintiff and another employee made the recommendation to purchase the machine after dealing exclusively with one Hans Mack, the president of Loh Optical, who visited

---

[1] The defendant does not advertise its products or employ agents or salesmen to solicit business in the United States; it does not pay Federal or Massachusetts income taxes; it owns no property in Massachusetts; it is not registered or qualified to do business in Massachusetts; and it maintains no banking relations here.

Massachusetts to discuss the purchase. The machine was delivered to the plaintiff's employer in Sturbridge in July of 1982.[2]

On these facts, the plaintiff has failed to sustain his burden of showing a rational nexus between his cause of action and the transaction of any business in Massachusetts by the defendant within the literal meaning of G. L. c. 223A, § 3(*a*). See *Good Hope Indus.*, *supra* at 6-7. Compare *Nichols Associates, Inc.* v. *Starr*, 4 Mass. App. Ct. 91, 96-97 (1976) (plaintiff's choice to do some work in Massachusetts office and occasionally to take deliveries there is not "transacting any business" within meaning of § 3[*a*]); *Walsh* v. *National Seating Co.*, 411 F. Supp. 564, 569-570 (D. Mass. 1976) (sporadic shipment of spare parts into Massachusetts does not meet requirement of a cause of action arising out of "transacting any business" within meaning of § 3[*a*]); *Catrone* v. *Ogden Suffolk Downs, Inc.*, 647 F. Supp. 850, 858-859 (D. Mass. 1986) (plaintiff's injury does not arise out of defendant's contacts with Massachusetts within meaning of § 3[*a*]).[3] Cf. *Carlson Corp.* v. *University of Vermont*, 380 Mass. at 105 (signing contract in Massachusetts, if cause of action arises from contract, is literally transacting business under § 3[*a*]); *C.H. Babb Co.* v. *A.M. Mfg. Co.*, 14 Mass. App. Ct. at 292-293 (transacting business when nonresident defendant actively and purposefully acquires business in Massachusetts); *Bond Leather Co.* v. *Q.T. Shoe Mfg. Co.*, 764 F.2d at 932 (transacting business when nonresident defendant negotiates by mailing letters and placing call

---

[2] The plaintiff cannot avail himself of his affidavit statement that the machine was shipped directly from West Germany, as the defendant controverts that assertion.

[3] The long arm statute has "implicit constitutional constraints." *Good Hope Indus.*, 378 Mass. at 7. As a result, the statutory standard has not always been clearly and separately defined. See and compare *"Automatic" Sprinkler Corp.*, 361 Mass. at 442-443; *Droukas* v. *Divers Training Academy, Inc.*, 375 Mass. 149, 153-154 (1978), which the *Good Hope Indus.* court described as involving situations where "the defendants might be viewed literally as having 'transacted . . . business' in Massachusetts, [but] their contacts with the Commonwealth were constitutionally insufficient to support jurisdiction under G. L. c. 223A, § 3(*a*)." 378 Mass. at 8 n.13. See also *Splaine* v. *Modern Electroplating, Inc.*, 17 Mass. App. Ct. 612 (1984).

to Massachusetts); *Hahn* v. *Vermont Law School*, 698 F.2d 48, 50 (1st Cir. 1983) (transacting business when nonresident defendant mails application and acceptance letter to Massachusetts); *Nova Biomedical Corp.* v. *Moller*, 629 F.2d at 195-196 (transacting business when nonresident defendant conducts or plans patent-related business in Massachusetts); *Boston Super Tools, Inc.* v. *RW Technologies, Inc.*, 467 F. Supp. 558, 561-562 (D. Mass. 1979) (transacting business when foreign corporation sells many products to Massachusetts distributor over more than a year and frequently communicates with distributorship); *Little Brown and Co.* v. *Bourne*, 493 F. Supp. 544, 546-548 (D. Mass. 1980) (transacting business when nonresident defendant enters into contract with plaintiff publisher and mails chapters to Massachusetts, setting in motion complicated series of editing and printing steps); *Eatable Greetable Products, Inc.* v. *Sweet Stop, Inc.*, 627 F. Supp. 777, 780-782 (D. Mass. 1986) (transacting business when nonresident defendant attempts to retake Massachusetts territory from plaintiff).

2. We turn to consideration of the plaintiff's claim that he has established sufficient facts to support personal jurisdiction under G. L. c. 223A, § 3(*d*). There is no dispute that the requirement of the first prong of clause (*d*) has been met, namely, that the plaintiff has alleged a tortious injury in Massachusetts arising out of the claimed negligent design and manufacture of the optical grinding machine in West Germany.

We recite undisputed facts relevant to the additional statutory conditions which permit assertion of personal jurisdiction in an action for compensation for such an injury, namely, "if [a defendant] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth." G. L. c. 223A § 3(*d*). During the seven-year period from 1977 through 1983 (records were not available for prior periods), an employee (three in all) of the defendant made eight visits (in the years 1977, 1978, 1979, 1981 and 1983, covering a total of eleven days) to companies located in Massachusetts. Five of the visits were for the purpose

of discussing delivered machines, two were "courtesy visits" to discuss a particular system manufactured by the defendant, and one was to discuss that system and "the market situation in the opthalmic [*sic*] field." Two of the visits were made, in 1983, by the defendant's managing director after the date, August 11, 1982, of the plaintiff's injuries. During almost all of these eight Massachusetts visits to "customers or potential customers" (so described in the defendant's answers to interrogatories), the defendant's employee attempted to sell the defendant's products.

The machine in question was purchased by the plaintiff's employer for about $56,000.00. The employer had previously bought three or four machines manufactured by the defendant. At a Massachusetts plant to which the plaintiff had been referred by Hans Mack, the plaintiff saw "dozens" of machines manufactured by the defendant.

Passing the question whether the defendant's visits and solicitations could be considered as regularly doing or soliciting business or as a persistent course of conduct within the literal meaning of clause (*d*) of G. L. c. 223A, cf. *Gunner v. Elmwood. Dodge, Inc.*, 24 Mass. App. Ct. 96, 99-100 (1987), we hold that the plaintiff has shown sufficient facts to satisfy the clause's literal disjunctive requirement that the defendant "derives substantial revenue from goods used . . . in this commonwealth." Literal satisfaction of the explicit statutory requirements is sufficient to support the assertion of jurisdiction provided that the statute's implicit due process limitations are not offended. See *Good Hope Indus., supra* at 6-7; *Carlson Corp.* v. *University of Vermont, supra* at 105.

The Superior Court judge concluded that, as the defendant sold its machines to Loh Optikmaschinen, the defendant did not derive substantial revenue from goods used in Massachusetts. That reasoning ignores economic reality and, for purposes of statutory construction, elevates form over substance.[4] The

---

[4] In his affidavit, the managing director of the defendant said, among other things: "Insofar as orders are filled in the United States of America, delivery is made F.O.B. German border and exclusively to Loh Optikmas-

evidence of the sale price of the machine in question and the presence of many others in Massachusetts permits the inference that the defendant derives substantial revenue from the use of its machines here.[5]

3. We now consider whether the assertion of jurisdiction over the defendant would offend due process requirements. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' *International Shoe Co.* v. *Washington,* 326 U.S. [310], 319 [1945]. By requiring that individuals have 'fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign,' *Shaffer* v. *Heitner,* 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment), the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit,'

---

chinen. . . . Upon delivery of the products to Loh Optikmaschinen, Switzerland, ownership and all of the rights and obligations arising therein are transferred to Loh Optikmaschinen, Switzerland, in accordance with agreements." In the defendant's answers to interrogatories the eight visits to Massachusetts were described as having been made to "customers or potential customers." The plaintiff might have productively probed the relationship between the defendant and Loh Optikmaschinen and the sequence of orders and sales.

[5] The defendant makes no argument that the sales of its machines in Massachusetts did not produce "substantial revenue." Rather, it argues that it is shielded from attribution of that revenue by its arrangements with Loh Optikmaschinen. The substantial revenue test in the Massachusetts long arm statute is drawn from the Uniform Interstate and International Procedure Act § 1.03(*a*)(4), 13 U.L.A. 361-362 (Master ed. 1986 ed.). Courts construing similar provisions in other State statutes have recognized the susceptibility of the test to both qualitative (ratio of local revenue to total revenue) and quantitative (absolute) approaches. See and compare *Founding Church of Scientology* v. *Verlag,* 536 F.2d 429, 432-433 (D.C. Cir. 1976); *Mark* v. *Obear & Sons,* 313 F. Supp. 373, 375-376 (D. Mass. 1970); *Allen* v. *Canadian Gen. Elec. Co.,* 65 A.D.2d 39, 41-43 (N.Y. 1978); *Olmstead* v. *American Granby Co.,* 565 P.2d 108, 115-116 (Wyo. 1977). In this case, there was no evidence presented as to the defendant's total revenues. We have concluded, however, that the evidence of local sales permits a finding of substantial revenue in the absolute sense.

*World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 297 (1980)." *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 471-472 (1985).

"Where a forum seeks to assert specific jurisdiction[6] over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, *Keeton* v. *Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), and the litigation results from alleged injuries that 'arise out of or relate to' those activities, *Helicopteros Nacionales de Colombia, S.A.* v. *Hall*, 466 U.S. 408, 414 (1984). Thus 'the forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State' and those products subsequently injure forum consumers. *World-Wide Volkswagen Corp.* v. *Woodson, supra,* at 297-298." *Burger King Corp.* v. *Rudzewicz,* 471 U.S. at 472-473. (Footnotes omitted.)[7]

---

[6] "[W]hen a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising 'specific jurisdiction' over the defendant." *Helicopteros Nacionales de Colombia, S.A.* v. *Hall,* 466 U.S. 408, 414 n.8 (1984). When the action does not arise out of or relate to the defendant's contacts with the forum, the State is exercising "general jurisdiction" over the defendant. *Id.* at 414 n.9. The constitutional standards for general jurisdiction are more demanding in that they require contacts of a continuous and systematic nature. See *id.* at 415-516; *Keeton* v. *Hustler Magazine, Inc.*, 465 U.S. 770, 779-780 (1984); *Glater* v. *Eli Lilly & Co.*, 744 F.2d 213, 215-216 (1st Cir. 1984). See also von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 1121 (1966).

[7] The contours of due process requirements for the exercise of personal jurisdiction over a nonresident defendant historically have been shaped from considerations of the limitations of federalism. See *International Shoe Co.* v. *Washington, supra* at 317; *World-Wide Volkswagen Corp.* v. *Woodson, supra* at 291-294. The Supreme Court has recently noted, however, that "[a]lthough [due process] protection operates to restrict state power, it 'must be seen as ultimately a function of the individual liberty interest preserved by the Due Process Clause' rather than as a function 'of federalism concerns.'" *Burger King Corp.* v. *Rudzewicz, supra* at 472 n.13, quoting from *Insurance Corp. of Ireland, Ltd.* v. *Compagnie des Bauxites de Guinee,*

In *World-Wide Volkswagen,* the Court held that the "foreseeability" of persons who purchased an automobile in New York being involved in an accident in Oklahoma was an insufficient basis to support the exercise of special jurisdiction by an Oklahoma State court over the New York retailer and wholesale distributor in a products liability action where the defendants had no contacts whatever with Oklahoma. Citing *Hanson* v. *Denckla,* 357 U.S. 235, 253 (1958), the Court said that the "unilateral activity" of the purchasers in taking the automobile to Oklahoma could not satisfy the defendant's "contacts" requirement with Oklahoma. 444 U.S. at 298.

The Court went on, however, to address a stream-of-commerce theory of specific personal jurisdiction which had been previously recognized by lower courts. See 4 Wright & Miller, Federal Practice and Procedure § 1067, at 283-290 (2d ed. 1987), and the cases there discussed. "This is not to say, of course, that foreseeability is wholly irrelevant. But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." 444 U.S. at 297.

"When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' *Hanson* v. *Denckla,* 357 U.S. at 253, it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its

456 U.S. 694, 702-703 n.10 (1982). Generally, the cases have applied the same due process principles to domestic and alien defendants. See the discussion in Born, Reflections on Judicial Jurisdiction in International Cases, 17:1 Ga. J. Intl. & Comp. L. 1 (1987); Lilly, Jurisdiction Over Domestic and Alien Defendants, 69 Va.L.Rev. 85 (1983). The defendant makes no argument that different principles should apply in this case.

product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." 444 U.S. at 297-298.

In *Asahi Metal Indus. Co.* v. *Superior Court*, 480 U.S. 102, 112 (1987), Justice O'Connor, in a portion of the opinion (Part II-A) in which she was joined by three Justices, wrote: "The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." Justice Brennan, joined by three Justices, disagreed, taking the position that due process concerns are met where a defendant places a product in the stream of commerce and is aware that the product is being marketed in the forum State. *Id.* at 116. Justice Brennan characterized the plurality's view as a "marked retreat" from the analysis in *World-Wide Volkswagen. Id.* at 118.[8]

---

[8] It is worth noting that in the *Asahi Metal Indus.* case, the plaintiff settled his products liabilities claims against multiple defendants and the only action which remained to be resolved by the California State court was an indemnity claim by a Taiwanese corporation against Asahi, a Japanese corporation. The application of California law to that dispute was, of course, in substantial doubt. 480 U.S. at 115. See *Burger King Corp.* v. *Rudzewicz*, 471 U.S. at 476-478.

"[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp.* v. *Rudzewicz*, 471 U.S. at 474. The apparent differences of the majority in *World-Wide Volkswagen* and the plurality in *Asahi Metal Indus.* are not regarding the validity of the stream of commerce theory of specific personal jurisdiction but concern subtleties in elusive definitions of the minimum contacts necessary to satisfy due process. Whichever view is assumed to be controlling, we think that Massachusetts may constitutionally assert jurisdiction over the defendant in this case.

There is no question on the facts presented that the defendant was aware that its products had been purchased by Massachusetts customers for use here. The sale of the machine in question was not an isolated occurrence. There were "dozens" of the defendant's machines in one Massachusetts plant and three or four in the plaintiff's employer's place of business prior to the purchase of the machine in question. While the sales of the defendant's products may have been accomplished indirectly, the defendant also acted directly to serve the Massachusetts market. The defendant sent its employees to Massachusetts to visit existing or prospective customers at three different companies to provide advice on delivered machines and to cultivate a market for the defendant's products. The defendant derived substantial revenue from its products used in Massachusetts. Cf. *World-Wide Volkswagen* v. *Woodson*, 444 U.S. at 299. When considered cumulatively, we think these facts support a finding of sufficient minimum contacts brought about by the purposeful acts of the defendant directed toward Massachusetts, so that the assertion of specific personal jurisdiction over the defendant by the Superior Court is consonant with due process. See *Burger King Corp.* v. *Rudzewicz*, 471 U.S. at 475-476; *Asahi Metal Indus.* v. *Superior Court*, 480 U.S. at 112, and cases cited.

The remaining inquiry is whether, considering defendant's minimum contacts along with other factors, the assertion of specific personal jurisdiction over the defendant would comport with "fair play and substantial justice." *International Shoe Co.*

v. *Washington*, 326 U.S. at 320. *Burger King Corp.* v. *Rudzewicz, supra* at 476. Among the other factors are the burden on the defendant in defending the claim in Massachusetts, "the plaintiff's interest in obtaining convenient and effective relief," and the interest of Massachusetts in "furthering fundamental substantive social policies." *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. at 292. "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. On the other hand, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" (citations omitted). *Burger King Corp.* v. *Rudzewicz, supra* at 477.

The defendant has made no argument that it would be unduly burdened by having to defend the plaintiff's suit in Massachusetts. In the past, the defendant has sent its representatives, including its managing director, here to visit existing and prospective customers in order to advise and to solicit new business. Many of the defendant's machines are located in Massachusetts. The allegedly defective machine was located here, and the plaintiff's injuries were sustained here. It is likely that witnesses to the incident and medical witnesses are located in Massachusetts. It is plain that jurisdiction in the Massachusetts courts serves the interest of the plaintiff in obtaining convenient and efficient relief. The only alternative which would seem open to the plaintiff would be to submit to the jurisdiction of a foreign country's dispute resolution mechanism and choice of law rules. On the record before us, economic considerations in prosecuting and defending any action tip heavily in favor of the plaintiff. Finally, Massachusetts has a strong expressed interest in "furthering fundamental substantive social policies" which have shaped our rules of law governing products liability actions.[9] Thus, we conclude, the assertion of specific personal

---

[9] "The Legislature has made the Massachusetts law of warranty congruent in nearly all respects with the principles [strict liability] expressed in Restate-

jurisdiction over the defendant in this case would be harmonious with fair play and substantial justice.

4. In summary, we hold that (1) the literal requirement of the long arm statute that the defendant "derive[ ] substantial revenue from goods used . . . in this commonwealth," G. L. c. 223A, § 3(*d*), has been satisfied, and (2) the "minimum contacts" of the defendant with Massachusetts are, when balanced with other factors, sufficient to permit the assertion of specific personal jurisdiction over the defendant under the due process clause.

*Judgment reversed.*

ment (Second) of Torts § 402(A) (1965)." *Back* v. *Wickes Corp.*, 375 Mass. 633, 640 (1978). *Hayes* v. *Ariens Co.*, 391 Mass. 407, 412 (1984). *Fahey* v. *Rockwell Graphic Syss., Inc.*, 20 Mass. App. Ct. 642, 651 (1985). "Recognizing that the seller is in the best position to ensure product safety, the law of strict liability imposes on the seller a duty to prevent the release of 'any product in a defective condition unreasonably dangerous to the user or consumer,' into the stream of commerce." *Correia* v. *Firestone Tire & Rubber Co.*, 388 Mass. 342, 355 (1983), quoting from Restatement (Second) of Torts § 402(A)(1) (1965). See *Cannon* v. *Sears, Roebuck & Co.*, 374 Mass. 739, 742 (1978).

"On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products." Restatement (Second) of Torts § 402A comment c (1965).