Toomey, J.
INTRODUCTION
Plaintiff Aetna Casualty & Surety Company (“Aetna”) brought a subrogation action against defendant/third-party plaintiff Dencast, Inc. (“Dencast”) for damage to Dencast’s property. The loss resulted from a fire allegedly caused by a defective crockpot manufactured by third-party defendant/fourth-party plaintiff Dazey Corporation (“Dazey”). Dencast has impleaded Dazey alleging that Dazey’s product malfunctioned and caused the fire. Dazey in turn has impleaded Advance Thermo Control Ltd. (“Advance Thermo”) alleging that an Advance Thermo component part caused the crockpot to malfunction. This matter is now before the court on motion of Advance Thermo to dismiss Dazey’s fourth-party claims for lack of personal jurisdiction pursuant to Mass.R.Civ.P. 12(b)(2). For the reasons set forth below, the fourth-party defendant’s motion to dismiss is ALLOWED.
BACKGROUND
Dazey is a Kansas corporation which manufactures household appliances. Advanced Thermo is a corporation organized under the laws of Hong Kong. It manufactures temperature indicating and regulation devices. Advance Thermo manufactures and sold outright to Dazey a thermostatically controlled appliance plug which Dazey used as a component part in manufacturing its crockpot.[1] One such plug was then purchased by Dazey and incoiporated into a crockpot which malfunctioned causing Dencast to suffer property damage to property located in Massachusetts. Advance Thermo has never sold any of its product in Massachusetts, has never done business with residents of Massachusetts and has never purposefully solicited business, through advertising and marketing, from residents of Massachusetts. Advance Thermo’s corporate offices are in Hong Kong, its manufacturing facilities are in the People’s Republic of China, and all of its officers and employees are at those locations. Advance Thermo sells approximately three million probe controls per year at $3.00 per unit, with 10-15% of those sales going to Dazey. In fact, it appears that Advance Thermo’s only contact with the Commonwealth of Massachusetts is the fact that Advance Thermo sold component parts to Dazey which incorporated the parts into a product Dazey sold in Massachusetts. Dazey is not an agent of Advance Thermo and Advance Thermo has no control over where Dazey does business.
DISCUSSION
When the defendant files a 12(b)(2) motion alleging that the court lacks personal jurisdiction, the plaintiff “has the burden of establishing the facts upon which the question of personal jurisdiction over a defendant is to be determined.” Nicholas Assoc. v. Starr, 4 Mass.App.Ct. 91, 93 (1976); Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978). Although the defendant does not have the burden of production or persuasion, a court can consider the defendant’s supporting affidavits which cite grounds for dismissal under Rule 12(b)(2). Spring v. Geriatric Authority, 394 Mass. 274, 292 (1985).
When determining if a court has personal jurisdiction over a nonresident defendant, the court must engage in a two-step analysis. Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979). First the court must determine whether, pursuant to the state’s long-arm statute, G.L.c. 223A, §§3(a)-(g), the court is able to exercise jurisdiction over the defendant. Second, if it is so authorized, the court must determine whether the exercise of jurisdiction is constitutional under the 14th Amendment of the United States Constitution. Id.
In this case, Dazey argues that the court has jurisdiction over Advance Thermo under Massachusetts’ long-arm statute, G.L.c. 223A, §3(d), which sets forth as a basis for jurisdiction over defendants:
causing tortious injury in this commonwealth by an act or omission outside this commonwealth if [it] regularly does or solicits business, or engages in any other persistent course of conduct, or derives *350 substantial revenue from goods used or consumed or services rendered, in the commonwealth.
G.L.c. 223A §3(d).
Dazey has met its burden of establishing jurisdiction under this section of the Massachusetts long-arm statute. Dazey has satisfied the first prong of the statute by alleging that a tortious injury occurred in Massachusetts, specifically, that a crockpot malfunctioned and caused property damage in Massachusetts. See G.L.c. 223A §3(d). The second prong of the long-arm requirement is satisfied as well. Dazey argues that Advance Thermo receives substantial revenue from goods used within the commonwealth. When considering the second prong of §3(d), courts have held that literal satisfaction of the substantial revenue requirement is sufficient to exercise jurisdiction under the section. “It is well settled under Massachusetts law that ‘substantial revenue’ is not an absolute amount nor an absolute percentage of total sale ... All that is required is literal satisfaction of the statutory requirement.” Keds Corp. v. Renee Intern. Trading Corp., 888 F.2d 215, 219 (1st Cir. 1989) (a sale of shoes for $15,000 meets the statutory requirements); Heins v. Wilhelm Loh Wetzlar Optical Machinery GMBH & Co. KG., 26 Mass.App.Ct. 14, 20 (1988).
A court may consider revenue obtained indirectly by a defendant through sales of the product into the forum state by a third party for purposes of satisfying the statutory requirement. Heins, 26 Mass.App.Ct. at 20-21 & n.2. Furthermore, a court may infer from the presence of a defendant’s product in the forum state that the defendant derived substantial revenue from the forum state. Id. Advance Thermo admits that it sold between 300,000 to 450,000 units per year to Dazey which in turn sold household appliances containing Advance Thermo’s product in Massachusetts. As a result, Advance Thermo received revenue indirectly from Dazey’s sales within Massachusetts as well as sales made by other manufacturers within Massachusetts which used Advance Thermo component parts. The statutory test is thus met.
Although Advance Thermo’s contacts satisfy the technical requirements of the Massachusetts long-arm statute G.L.c. 223A §3(d), its contacts with Massachusetts are insufficient to allow the commonwealth to assert jurisdiction over it pursuant to the due process requirements of the 14th Amendment to the United States Constitution. In order for the assertion of jurisdiction to satisfy the 14th Amendment, the court must find that the nonresident defendant has certain minimum contacts with the state such that maintenance of the suit does not offend “traditional notions of fair play and justice.” International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The minimum contacts “must have a basis in ‘some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.’ ” Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 109 (1987) (citing Burger King v. Rudzewics, 471 U.S. 462, 475 (1985)). Finally, even assuming that the defendant has sufficient minimum contacts with the forum state, the court may consider the contacts “in light of other factors to determine whether the assertion of personal jurisdiction would comport with ‘fair play and substantial justice.’ ” Burger King, 471 U.S. at 476.
Advance Thermo’s contacts with Massachusetts are clearly insufficient to allow Massachusetts to exercise jurisdiction over it without violating Advance Thermo’s 14th Amendment rights. Advance Thermo does not sell its product directly within Massachusetts, does not solicit business in Massachusetts, advertise within Massachusetts, send employees to Massachusetts or engage in any other persistent course of conduct with Massachusetts. In fact, Dazey has not alleged any contact Advance Thermo has with the forum state other than the sale of Advance Thermo’s component part to manufacturers outside of Massachusetts. Advance Thermo clearly did not act to avail itself of the protection of the laws of Massachusetts. The fact that the product eventually found its way into the state was by mere chance and not attributable to any intent or act of Advance Thermo. Furthermore, Advance Thermo is a corporation organized under the laws of Hong Kong. It maintains an office and manufacturing facility outside of the United States. It would thus be manifestly unfair to force this corporation to defend itself in Massachusetts in light of its attenuated contacts with the forum state. International Shoe, 326 U.S. at 316; Asahi Metal Industry Co., 480 U.S. at 112.
ORDER
For the foregoing reasons, it is hereby ORDERED the fourth party defendant’s motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(2) be ALLOWED.

 Advance Thermo occasionally uses an Illinois corporation, Advance Technical Components, Inc., as its sales agent in the United States. However the sales at issue in this case were not made through Advance Technical Components, Inc. but rather were sold directly to Dazey.