Donovan, J.
This case arrives before this court on third-party defendant, Bogdahn Technik Gmbh’s (BT) motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. On April 27, 1995, Plaintiff, Mabel Greineder (Greineder) filed the original complaint in this action alleging negligence and breach of warranty against defendants, Drs. Foster & Smith (Foster & Smith), and Flexi USA, Inc. (Flexi), arising from an injury sustained while using a retractable dog leash mail-ordered from Foster & Smith. On July 20, 1995 Flexi filed a third-party complaint against BT seeking indemnification and contribution. BT presently argues that it has insufficient contact with the Commonwealth of Massachusetts to permit this court’s exercise of jurisdiction. For the reasons that follow, BT’s motion is ALLOWED.
BACKGROUND
The present action derives from claims made by Greineder that she suffered personal injury in April 1992 from a retractable dog leash. Greineder claims that she ordered the leash by mail in November 1991, from Foster & Smith, a corporation organized under the laws of Wisconsin with a usual place of business in Wisconsin. Foster & Smith originally purchased the leash from Flexi, a Wisconsin corporation with a usual place of business in Ohio.
BT is a corporation organized under the laws of the Federal Republic of Germany and maintains a usual place of business in Germany. At all times relevant, BT produced and sold the leashes to Flexi. BT sold the leashes F.O.B. Germany. Flexi arranged and paid for the shipping. Flexi handles all warranty claims.
BT’s president is Manfred Bogdahn (Bogdahn). From January 1988 to September 27, 1990, Bogdahn held a controlling interest in Flexi. On September 27, 1990, Bogdahn sold his interest in Flexi to Kenneth Humpert pursuant to a stock purchase agreement (the agreement). The terms of “the agreement” required Flexi to market BT’s product and cooperate with BT in resolving any problems Flexi might incur in distributing the product. Included in the agreement was a distributor agreement under which BT agreed “to make Flexi the exclusive distributor in the United States of America of all products manufactured, licensed, and marketed by BT . . .” Also included was a choice of law provision which provided that ”[t]he law of the Federal Republic of Germany shall apply to all terms in the agreement pertaining to the sole distribution rights between Bogdahn Technik Gmbh and Flexi USA, Inc.” The agreement contained a provision allowing Bogdahn to terminate the distributor agreement with Flexi and repurchase the shares upon the occurrence of certain contingencies not here relevant.
Flexi attempted to promote BT’s products by targeting mass merchandisers as customers. Flexi marketed and sold BT products through catalog companies including Foster & Smith. In Massachusetts, Flexi retained independent manufacturer’s representatives to market the leashes. Flexi presently contends that these actions, which bring it within this court’s jurisdiction, are properly attributed to BT through an agency relationship and allow this court to exercise personal jurisdiction over BT.[2]
DISCUSSION
In analyzing a motion to dismiss under Rule 12 (b) (2) the court properly considers affidavits, attachments, answers to interrogatories, and deposition testimony. Heins v. Wilhelm Loh Wetzler Optical Machinery GmbH & Co. KG, 26 Mass.App.Ct. 14, 15 (1988). “Generally *195 a claim of personal jurisdiction over a nonresident defendant presents a two-fold inquiry: (1) is the assertion of jurisdiction authorized by statute, (2) if authorized, is the exercise of jurisdiction under state law consistent with basic due process requirements mandated by the United States Constitution?” Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979). Only when both questions are answered affirmatively can the court properly exercise jurisdiction. Id at 6. “General laws c. 223A, §3 cannot authorize jurisdiction which is constitutionally unacceptable even though the fact pattern asserted in support of jurisdiction apparently satisfies the statutes literal requirements. Likewise, G.L.c. 223A, §3 asserts jurisdiction to the constitutional limit . . . only when some basis for jurisdiction enumerated in the statute has been established.” Heins, 26 Mass.App.Ct. at 16 (citations omitted).
a.Ch. 223A, §3 (a)
Flexi first argues that BT’s actions, as they relate to the Commonwealth, satisfy Section 3(a)’s requirements. Flexi contends that it acted as BT’s agent in transacting business in the Commonwealth. Asserting that it solicited business through advertising, catalogs, and manufacturer representatives, pursuant to the stock purchase agreement, Flexi admits that it “transacted business” in Massachusetts under Section 3(a). Consequently, Flexi argues that BT satisfies the literal requirements of Section 3(a) as Flexi’s principal.
Section 3(a) provides that “[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person’s transacting any business in the Commonwealth.” The court construes the “transacting any business” clause broadly. See Heins, 26 Mass.App.Ct. at 17. “[Generally the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy this requirement.” Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). However, where the defendant maintains no control or ownership interest over its distributor and does not control the marketing, price, or sales of its product in the United States, jurisdiction does not attach under Section 3(a). Heins, 26 Mass.App.Ct. at 17.
Given the above standards, the court cannot conclude that BT transacted business in the Commonwealth within the meaning of Section 3 (a). The record fails to reveal any direct or purposeful solicitation undertaken by BT. BT produced the dog leashes in issue and sold them, F.O.B. Germany, to Flexi. Flexi then assumed control of the leashes for purposes of marketing and distribution. BT never owned a controlling interest in Flexi and Flexi has failed to demonstrate that any solicitation it may have conducted in Massachusetts occurred at BT’s urging.
As to Flexi’s agency argument, the facts cannot sustain a finding that Flexi, during the relevant time period, acted as BT’s agent. It is apodictic that an agency relationship “results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control.” Kirkpatrick v. Mutual Life Ins. Co., 393 Mass. 640, 645 (1985) (quoting Restatement (Second) of Agency §1 (1958)). Courts may infer an agency relationship where the principal acquiesces in and adopts the actions of the agent. Labonte v. White Construction Co., Inc., 363 Mass. 41, 45 (1973). However, the principal must maintain a certain degree of control over the agent before the court may infer an agency. See Woodlawn Realty Corp. v. Smith-Scott Co., Inc., 226 F.Sup. 704, 705 (1964) (no agency where manufacturer did not control distributor’s solicitation or resale of product). In the present case, BT exercised no control over Flexi’s marketing and distribution of the leashes. While Bogdahn could have personally repurchased his shares in Flexi had Flexi not met certain performance standards, this fact does not demonstrate sufficient control to imply an agency relationship between Flexi and BT. See Singer v. Piaggio, 420 F.2d 679, 681 (1970) (manufacturer’s right to cancel distribution agreement if sales quotas not met insufficient control to find agency). Additionally, Flexi has failed to produce any evidence to indicate that BT authorized Flexi to act on its behalf. No agency existed between BT and Flexi and, therefore, any actions taken by Flexi in Massachusetts will-not- bring BT within the jurisdictional reach of this court.
b.Chapter 223A, §3(d)
Section 3(d) provides in relevant part that a Massachusetts Court may exercise personal jurisdiction over a nonresident party that commits an act or omission outside the Commonwealth when that party, or its agent, causes “tortious injury in this Commonwealth if he regularly does or solicits business or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in the Commonwealth.” Flexi again points to a substantial and continuous course of conduct which it admits to have undertaken to market and distribute BT’s products in Massachusetts. Flexi again relies on its contention that it acted as BT’s agent and that a court finding jurisdiction over it under Section 3(d) must also find jurisdiction over BT. Since the court has already determined that no agency relationship existed between the parties and the record reveals no facts to satisfy the standard articulated in Section 3(d), the court must conclude that jurisdiction is not authorized by Section 3(d).
c.Constitutional Analysis
Finally, the exercise of jurisdiction would not comport with constitutional standards. “Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.” Asahi Metal Ind. v. Superior Ct., 480 U.S. 103, 115 (1987). The constitutional touchstone of the determination of whether an exercise of personal jurisdiction comports with due process remains whether the defendant purposely established minimum con *196 tacts in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). Minimum contacts on atheory of specific jurisdiction requires the plaintiff to demonstrate three factors: (1) the cause of action arises out of or relates to defendant’s contacts with the forum state, (2) the defendant purposely availed itself of the privilege of conducting business within the forum state, (3) the exercise of jurisdiction comports with fair play and substantial justice. Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994). This constitutional issue need not detain the court long as the United States Supreme Court decision in Asahi Metal IncL clearly governs the analysis. See D'Almeida v. Stork Brabant B.V., 71 F.3d 50, 51 (1st Cir. 1995), cert. denied, 116 S.Ct. 1570 (1996) (summarily disposing of similar claim based on Asahi).
The Asahi Court stated that “[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposely directed toward the forum state.” Asahi, 480 U.S. at 112. The court noted that the nonresident defendant did not design its product in anticipation of sale in the forum state and did not advertise or solicit business in the forum state. Id. at 112-13. The fact that the nonresident defendant did not create, control or employ the distribution network further indicated that it did not purposely direct its acts toward the forum state. Id. at 112. This overall lack of contact with the forum state led the court to conclude that the exercise of jurisdiction by the forum’s court would exceed the boundaries of due process. Id. at 113.
A similar situation exists presently before this court. BT manufactured its dog leashes in Germany and transferred its product to Flexi in Germany. BT does not maintain offices or a place of business in Massachusetts. BT has never solicited business in Massachusetts, never sent an officer, director, employee, or agent to Massachusetts, and has never contracted with any firm anywhere with the intention of specifically targeting the Massachusetts market. In short, BT has, at most, initiated the dog leash into the stream of commerce. Cf. Heins, 26 Mass.App.Ct. at 25. Such an attenuated connection to Massachusetts clearly fails to satisfy constitutional standards.
Finally, any exercise of jurisdiction over BT would offend “traditional notions of fair play and substantial justice.” International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Both the United States Supreme Court and the First Circuit have held, in factually similar cases, that a forum state lacks significant interest in adjudicating contribution and indemnification actions between nonresident parties. See Asahi, 408 U.S. at 114 (describing California court’s interest in indemnity action between Japanese and Taiwanese corporations as considerably diminished); D'Almeida, 71 F.3d at 51 (finding Massachusetts interest in contribution and indemnify action between Dutch companies extremely limited). In both cases, the Court and the First Circuit would have declined to exercise jurisdiction regardless of their minimum contacts findings. See Asahi, 480 U.S. at 114 (assertion of jurisdiction unreasonable regardless of stream of commerce); D'Almeida, 21 F.3d at 51 (assertion of jurisdiction improper even if minimum contacts were present). Of particular relevance to the First Circuit was a forum selection clause, designating Holland as the locus of litigation, in the agreement between the third-party plaintiff and the third-party defendant. See D'Almeida, 71 F.3d at 51.
The same factors that militated against asserting jurisdiction in the above described cases persist in the present case. Flexi, a Wisconsin corporation is seeking contribution and indemnity from BT, a German corporation. Moreover, the stock purchase agreement between the parties contained a choice of law provision directing that German law would apply to any dispute between the parties. This choice of law provision combined with the court’s limited interest in adjudicating the dispute and BTs negligible contact with the Commonwealth necessitates the conclusion that any assertion of personal jurisdiction by this court over BT would violate traditional standards of fair play and substantial justice. Accordingly, BTs motion to dismiss is ALLOWED.
ORDER
It is hereby ORDERED that BTs motion to dismiss for lack of personal jurisdiction be ALLOWED.

 Flexi first argues that it needs additional time to complete discovery on the question of jurisdiction. Flexi does not stand in the shoes of a party who is a complete stranger to BT or Bogdahn. As previously noted, until September 27, 1990 Bogdahn owned a controlling interest in Flexi.