Muse, J.
Virginia Ross and John J. Ross, Sr. (collectively “the plaintiffs”) bring this action against four defendants, namely, Beldare Enterprises, Inc.,[3] Beldare Enterprises, Ltd.,[4] Pelita Industries and First Thai.[5] The gravamen of the complaint is an action for products liability. Before the court is defendant Pelita Industries’ (hereinafter “Pelita”) motion to dismiss for (i) lack of personal jurisdiction pursuant to Mass.R.Civ.P. 12(b)(2) and (ii) insufficient process pursuant to Mass.R.Civ.P. 12(b)(4).
For the reasons stated herein, the court finds that while the process served on Pelita was sufficient, personal jurisdiction is lacking over Pelita. Therefore, Pelita’s motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(4) is DENIED, and Pelita’s motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(2) is ALLOWED.
BACKGROUND
The facts set forth by the parties in the pleadings, affidavits and exhibits can be summarized as follows. The plaintiffs, Virginia and John Ross, are husband and wife and reside at 1123 Revere Beach Parkway, Apartment 103, Revere, Massachusetts. Defendant Pelita is a corporation with a principal place of business at J1 Daan Mogot 51, Jakarta 11520, Indonesia. In May 1992, the plaintiffs purchased a cookware set at a Caldor Department Store (“Caldor”) located in Malden, Massachusetts. The pan at issue was sold as part of a seven-piece cookware set that was advertised by Caldor. The advertisement indicated that the cookware set was being sold at all Caldor stores in Massachusetts[6] The cookware set was allegedly manufactured by defendant Pelita.[7] On July 28, 1997, while properly using a saucepan (which was part of the cookware set) in a manner that was foreseeable to the defendant, the handle of the saucepan broke when Mrs. Ross lifted it away from a stove-top burner, causing the saucepan to fall to the ground and to spill its contents over her legs. As a result of this incident, Mrs. Ross allegedly sustained severe burns to both legs, requiring extensive skin grafts and leaving her with substantial scarring in the grafting sites. She also allegedly sustained severe pain of body and mind, suffered and continues to suffer medical expenses, loss of earnings and loss of earning capacity.
Pelita occasionally uses a distributor to sell its products. According to the affidavit of Christopher McCarthy, a former buyer for the Caldor Corporation, the subject pan was purchased through Caldor’s buying agent, Beldare Enterprises.
The Rosses brought this action alleging sixteen (16) counts in their amended complaint, which amount to negligence claims by Virginia Ross against all defendants, breach of warranty claims by Virginia Ross against all defendants, 93A claims brought by Virginia Ross against all defendants, and loss of consortium claims brought by John J. Ross, Sr. against all defendants.
Subsequent to the filing of the complaint, Pelita brought the present motion to dismiss alleging that this court may not assert personal jurisdiction over it (pursuant to Mass.R.Civ.P. 12(b)(2)), and alleging insufficiency of process (pursuant to Mass.R.Civ.P. 12(b)(4)). A hearing was initially held on this motion on February 27, 2003. At that time, this court (Muse, J.) deferred making a decision on this matter, allowing the plaintiffs to have a limited discovexy opportunity as to the jurisdictional issues raised. This jurisdictional discovery was not to include depositions and not to be related to any product identification matter raised. A second hearing was held on April 29, 2003, at which time Pelita agreed that, “solely for purposes of this motion, it may be fairly inferred that Pelita knew that when their products were shipped to Caldor, some would be sold in Caldor outlets in Massachusetts.”
DISCUSSION
A. Motion to Dismiss Because of Insufficient Process
Pelita brings a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(4), alleging insufficiency of process. According to Pelita, nothing in the court docket file indicates whether effective process was actually served, and if it was served, there is no indication whether service was sufficient under Mass.RCiv.P. 4(e) because there is no return of service for Pelita in the court docket file. The Rosses counter Pelita’s contentions, asserting that the summons and complaint were served on Januaiy 15, 2002, pursuant to the Massachusetts long-arm statute, G.L.c. 223A, §6,[8] by in-hand service upon Pelita’s agent, Sjamsul Tuki-man, while he was at the McCormick Place Exposition and Convention Center in Chicago, Illinois.
Mass.R.Civ.P. 4(e) states:
When any statute or law of the Commonwealth authorizes service of process outside the Commonwealth, the service shall be made by delivering a copy of the summons and of the complaint: (1) in any appropriate manner prescribed in subdivision (d) of this rule; or (2) in the manner prescribed by the law of the place where in which the service is made for service in that place in an action in any of its courts of general jurisdiction; or (3) by any form of mail addressed to the person to be served and requiring a signed receipt; or (4) as directed by the appropriate foreign authority in response to a letter rogatory; or (5) as directed by an order of the court.
Rule 4(e) controls out-of-state service and “embodies the procedure set out in the long-arm statute.” Reporter’s Notes to Mass.R.Civ.P. 4. “When there is a delay in service of the summons, a judge under Rule 4 is to be guided by the circumstances of each case, absent a specific directory or mandatory rule.” School Committee of Holyoke v. Duprey, 8 Mass.App.Ct. 58, 61 (1979). “The mere passage of time does not require a dismissal; it must constitute prejudice to the defendants, afford the plaintiffs an unfair tactical advan *482 tage, or involve harassment of the defendants.” Id. at 60-61 (internal citation's omitted). This is because “(d]elay brings into question the plaintiffs good faith and due diligence, which in the absence of extreme delay, must be balanced against the prejudice caused to the defendant.” Id. at 61 (internal citations omitted).
Based on the record before the court, the plaintiffs have made in-hand service of both the summons and the complaint upon Pelita, and in addition to this, the plaintiffs are in the process of making what they allege to be redundant service of process in Indonesia pursuant to a Letter Rogatoiy presently being monitored by the United States Department of State. Therefore, defendant Pelita’s motion to dismiss for insufficiency of process must fail, and is DENIED.
B. Motion to Dismiss for Lack of Personal Jurisdiction
“When, as here, the assertion of in personam jurisdiction has been challenged under Mass.R.Civ.P. 12(b)(2), ... a plaintiff must make a prima facie showing of evidence that, if credited, would be sufficient to support findings of all facts essential to personal jurisdiction.” Fern v. Immergut, 55 Mass.App.Ct. 577, 579, rev. denied, 438 Mass. 1102 (2002). Specifically, the “plaintiff has the burden of establishing the facts upon which the question of personal jurisdiction over a defendant is to be determined.” C.H. Babb Co., Inc. v. A.M. Mfg. Co., 14 Mass.App.Ct. 291, 292 (1982) (internal citations omitted). “In resolving the issue of whether the plaintiff has established its burden, [this court must] accept as true only the uncontroverted facts as they appear in the materials which are before the [court].” Fern, 55 Mass.App.Ct. at 579, quoting Heins v. Wilhelm Loh Wetlar Optical Mach. GmbH & Co. KG, 26 Mass.App.Ct. 14, 16, rev. denied, 402 Mass. 1105 (1988).
A claim of personal jurisdiction over a nonresident defendant generally “presents a two-fold inquiiy: (1) is the assertion of jurisdiction authorized by statute, and (2) if authorized, is the exercise of jurisdiction under State law consistent with the basic due process requirements mandated by the United States Constitution?” Stanton v. AM General Corporation, 50 Mass.App.Ct. 116, 117 (2000), quoting Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979). The question to be decided here is whether the Rosses have presented uncontroverted jurisdictional facts sufficient to survive due process scrutiny and to satisfy at least one of the statutoiy prerequisites. Fern, 55 Mass.App.Ct. at 580-81 (additional citations omitted). One such statutoiy prerequisite, the Massachusetts long-arm statute, “authorizes our courts to exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person’s transacting any business in this commonwealth.” Stanton, 50 Mass.App.Ct. at 117, quoting G.L.c. 223A, §3(a). As the Supreme Judicial Court (“SJC”) has stated, “in order for a nonresident defendant to be subject to jurisdiction, there must be ‘some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections its laws.’ ” Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978), quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958).
1. The Massachusetts Long-Arm Statute
The Massachusetts long-arm statute, G.L.c. 223A, §3(a), “gives rise to jurisdiction if the defendant either directly or through an agent transacted any business in Massachusetts, and the alleged [cause of action] arose from such transaction of business.” Droukas, 375 Mass. at 153. “The question [of] what activities constitute the transacting of business in this or any other case must be decided on the particular facts involved.” Id. at 156-57. Upon examining the alleged nature of Pelita’s activities in this case and the alleged legal injury claimed to have arisen therefrom, this court finds that jurisdiction does lie under the so-called transaction of business clause of the long-arm statute. See id. at 157.
The limited record before this court shows that Caldor sold pans manufactured by Pelita throughout its Caldor Department Stores in Massachusetts. Although these pans may have been sold by a distributor to Caldor and not directly from Pelita to Caldor, Pelita admits to the court that it may be fairly inferred it knew that when its products were shipped to Caldor, they would be sold in Massachusetts. Pelita’s knowledge that their products would be sold in Massachusetts, together with the fact that the products liability and related causes of action occurred in Massachusetts (at the Ross’ home) as a result of purchasing pans sold in Massachusetts, is enough to evidence that Pelita transacted business in Massachusetts. See generally, Fairview Mach. & Tool Co. v. Oakbrook Intern., 56 F.Sup.2d 134, 137 (D.Mass. 1999) (stating that “courts construe the Massachusetts ‘transacting any business’ clause broadly”).
2. The Due Process Prong of the Personal Jurisdiction Inquiiy
Notwithstanding a finding of jurisdiction under the long-arm statute, the inquiiy “turns to whether the exercise of personal jurisdiction over the defendants comports with constitutional requirements.” Fairview, 56 F.Sup.2d at 138. “G.L.c. 223A, §3, cannot authorize jurisdiction which is constitutionally unacceptable, even [if] the fact pattern asserted in support of jurisdiction apparently satisfies the statute’s literal requirements.” Heins, 26 Mass.App.Ct. at 16. “The Due Process Clause protects an individual’s liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful ‘contacts, ties, or relations.’ ” Heins, 26 Mass.App.Ct. at 21, quoting International Shoe Co. v. Washington, 326 U.S. 310, 319 (1945). “By requiring that individ *483 uals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign, the Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.” Heins, 26 Mass.App.Ct. at 21 (citations omitted). “Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.” Id. In these cases, “the constitutional touchstone remains whether the defendant purposefully established ‘minimum contacts’ in the forum State.” Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985), citing International Shoe Co., 326 U.S. at 316.
“The forseeability that is- critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant’s conduct and connection with the forum State are such that [they] should reasonably anticipate being haled into court there.” C.H. Babb, 14 Mass.App.Ct. at 294, quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).
After consideration of the decision of Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 107 (1987) (plurality decision), and quoting four justices of the Supreme Court, the Appeals Court in Heins found that the sales and marketing activity of the defendant company supported a finding of sufficient minimum contacts:
The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant’s awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.
Heins, 26 Mass.App.Ct. at 24, quoting Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 107 (1987) (plurality decision). Pelita contends that it is an Indonesian company, not registered to do business in Massachusetts, has never done business here, does not solicit business from here, has no property here, and derives zero percent of its revenue from sales in Massachusetts. Pelita goes so far as to allege that the plaintiffs fail at establishing even a single contact with the Commonwealth of Massachusetts. While Pelita admits it occasionally uses a distributor to sell its products, none of these distributors have ever been located in Massachusetts, and Pelita alleges in its memorandum in support of its motion that they never knew that these distributors would sell Pelita products in Massachusetts. Notwithstanding this contention, supplemental discovery was conducted subsequent to Pelita’s memorandum being submitted to the court. At the April 29, 2003 hearing, as a result of this jurisdictional discovery, Pelita agreed to the limited stipulation set out above concerning its arguable knowledge that its products would be sold in the Commonwealth.[9] In the court’s view, this still is not enough to confer jurisdiction pursuant to the constitutional test.
In Rodriguez v. Fullerton Tires, 115 F.3d 81 (1st. Cir. 1997), a Puerto Rico resident brought a products liability action against a nonresident tire dealer, and the tire dealer then asserted a third-party complaint against a nonresident tire rim manufacturer. The third-party defendant rim manufacturer filed a motion to dismiss for lack of personal jurisdiction, and the First Circuit upheld the District Court’s dismissal. The defendant in Rodriguez argued that “by placing its product into the stream of commerce, it transacted business in Puerto Rico sufficient to satisfy the minimum contacts requirements.” 115 F.3d at 85. The First Circuit disagreed, and relying on Asahi, 480 U.S. 102, held that “this without more is not an act of the defendant purposefully directed toward the forum State” and thus was insufficient to support a claim of personal jurisdiction." Rodriguez, 115 F.3d at 85. The Rodriguez court then went even further in their analysis, holding that even if the third-party defendant had “specific knowledge that the stream of commerce would move its tire rims into Puerto Rico . . . this awareness alone would not be enough to constitute the purposeful availment which is necessary for a showing of minimum contacts.” Id., citing Asahi, 480 U.S. at 112.
Similarly, in the case before the court, even though Pelita had specific knowledge that the stream of commerce would move its pans into Massachusetts, this alone is not enough. As such, the plaintiffs have failed to meet their burden under the Due Process Clause. Therefore, defendant Pelita’s motion to dismiss for lack of personal jurisdiction is ALLOWED.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant Pelita’s motion to dismiss Counts IX, X, XI and XII pursuant to Mass.R.Civ.P. 12 (b)(4) is DENIED. It is further ORDERED that Pelita’s motion to dismiss Counts IX, X, XI and XII pursuant to Mass.R.Civ.P. 12(b)(2) is ALLOWED.

Beldare Enterprises, Inc. is a North Carolina corporation.

Beldare Enterprises, Ltd. is a corporation with a principal place of business in Hong Kong and is the parent company of Beldare Enterprises, Inc.

First Thai is a corporation with a principal place of business in Bangkok, Thailand.

At the time, Caldor had stores in several states, including Massachusetts, Connecticut, Rhode Island, New Jersey, New York and Pennsylvania.

The plaintiffs allege that the cookware set was manufactured either by Pelita or by First Thai, but for purposes of this motion, the court assumes, arguendo, that the set was manufactured by Pelita.

General Laws c. 223A, §6 allows for service outside of Massachusetts, stating, in relevant part, that
(a) When the law of this Commonwealth authorizes service outside this commonwealth, the service . .. may be made:
(1) by personal delivery in the manner prescribed for service within this commonwealth; [or]
(2] in the manner prescribed by the law of the place in which the service is made for service in that place in an action in any of its courts of general jurisdiction . . .

The plaintiffs’ opposition to the defendant’s motion alleges that Pelita’s motion should be considered a motion for summary judgment because it presents an issue outside the pleadings and thereby gives the plaintiffs the right to conduct discovery. The court has given the plaintiff an opportunity for limited discovery in order to address the specifics of this motion, and therefore does not accept the plaintiffs’ position that this should be treated as a summary judgment motion.