Lauriat, J.
This action arises out of a partnership agreement. Defendants, Jeffrey Cole, Eva Cole, and Blue Marble Group, Inc. (“BMG II”) (collectively, the “defendants”), have moved to dismiss this action pursuant to Mass.R.Civ.P. 12(b)(2) for lack of personal jurisdiction.[1] The Defendants contend that they had no significant contacts with the Commonwealth of Massachusetts, and that exercising personal jurisdiction over them would be inconsistent with due process. Plaintiffs, Better Boating Association, Inc. (“BBA”), James W. Sewall Company (“Sewall”), and BSB Electronic Charts LLP (“BSB”) (collectively, the “plaintiffs”), oppose defendants’ motion. For the following reasons, the defendants’ motion to dismiss for lack of personal jurisdiction is denied.
BACKGROUND
The following facts, relevant to the jurisdictionall issue before the court, are taken from the parties’ affidavits and depositions and viewed in the light most favorable to the plaintiffs. BBA is a Massachusetts corporation with a principal place of business in Rock-land, Massachusetts. James M. Owen is the president of BBA. Sewall is a Maine corporation with a principal place of business in Old Town, Maine. BMG II is a Maine corporation with a principal place of business in Gardiner, Maine. It is the corporate successor to Blue Marble Geographies, Inc. (“BMG I”), also of Gar-diner, Maine. Jeffrey Cole was an officer, shareholder, and director of BMG I. The Coles are officers and directors of BMG II.
On August 24, 1994, BBA, Sewall, and BMG I entered into a partnership agreement (“the Agreement”) to create BSB. BSB was formed to manufacture and distribute a computerized database of nautical charts. BSB’s bookkeeping, marketing, order fulfillment, production, and storage facilities were all located in Rockland, Massachusetts. The Agreement provided that BSB’s principal office would be Rock-land, Massachusetts. Under the Agreement, disputes between the partners would be governed by Massachusetts substantive law. The Agreement also prohibited the transfer of any partnership interest except to other partners (BBA, Sewall or BMG I) so long as the transfer was agreed upon by all partners.
On May 10, 1995, BMG I signed a letter of intent to sell its partnership interest in BSB to RJC Development Company, t/a Pinpoint Systems International (“Pinpoint”), a Washington, D.C. corporation. On May 22, 1995, Jeffrey Cole advised BBA of BMG I’s intent to sell its partnership interest subject to the approval of BBA and Sewall.
BBA and Sewall met with Pinpoint and determined that they would not approve the proposed sale. Nevertheless, Jeffrey Cole telephoned BBA president James Owen and sent at least one letter to Owen in an unsuccessful attempt to convince BBA to approve the proposed sale. In addition, Jeffrey Cole sent a letter to BBA’s counsel attempting, unsuccessfully, to sway BBA.
Despite BBA’s and Sewall’s disapproval, BMG I attempted to alienate its BSB partnership interest. *659 Plaintiffs allege that BMG I engaged in a series of transactions to sell BMG I’s partnership interest to Pinpoint. Plaintiffs claim that on June 5, 1995, BMG I’s sole shareholder, Eva Cole voted to change BMG I’s name to BMG Chart Products, Inc. (“BMG Chart”), authorized BMG Chart’s officers to sell or transfer BMG Chart’s assets and authorized the transfer of the name “Blue Marble Geographies” at BMG Chart’s Board of Directors discretion. Subsequently, all of BMG I’s other assets were conveyed to BMG II, a new corporation, owned and controlled by the Coles. BMG II retained BMG I’s expertise and proprietary information relating to the development of geographic software components. At this point, it appears that BMG Chart’s only asset was its partnership rights in BSB.
On or about August 16, 1995, the Coles and Pinpoint entered into a stock purchase agreement whereby Eva Cole agreed to sell all of the stock of BMG Chart to Pinpoint. Pinpoint then became the successor-in-interest to BMG Chart’s rights under the letter of intent with BMG II for the sale of BSB’s partnership interest.
The BMG Chart-Pinpoint stock purchase agreement signed by Eva Cole recites that BSB is a “Massachusetts General Partnership.” Under the stock purchase agreement, the sole asset of BMG Chart is BMG I’s partnership interest in BSB. BMG II has also filed with the state of Maine to retain the use of the name “Blue Marble Geographies.”
In October 1995, BBA and Sewall learned of the transfer of BMG I’s partnership interest in BSB to Pinpoint through BMG Chart. BBA’s Massachusetts counsel received a letter from Eva Cole on November 8, 1995, regarding the transfer of the partnership interest. Thereafter, plaintiffs filed this lawsuit alleging breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, intentional interference with contractual relations, and violations of G.L.c. 93A, §11.
DISCUSSION
A plaintiff confronted with a motion under Mass.R.Civ.P. 12(b)(2) bears the burden of “establishing the facts upon which the question of personal jurisdiction over the defendant is to be determined.” Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978). Here, defendants’ actions were not continuous and systematic, thus barring an exercise of general jurisdiction. See Foster Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995). In the absence of general jurisdiction, the court’s inquiry in this case must focus on whether there is sufficient personal jurisdiction based on the nature and extent of defendants’ contacts with Massachusetts.
A determination of personal jurisdiction requires a two-part analysis. First, the court must determine whether personal jurisdiction is authorized by the Massachusetts long arm statute, G.L.c. 223A, §3(a)-(h). Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). In so doing, the court must identify and analyze a nonresident defendant’s specific contacts with the forum state. Id. Here, plaintiffs rely on §§3(a), (c), and (d) of the long arm statute (G.L.c. 223A).
In the second part of the personal jurisdiction analysis, the court must consider whether the exercise of personal jurisdiction is consistent with the Constitution’s Due Process Clause. Tatro, 416 Mass. at 767; see also Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979); Packard v. Packard, 34 Mass.App.Ct. 543, 548 (1993). In this case, plaintiffs allege that an assertion of personal jurisdiction over the defendants would comport with due process.
I. Long-Arm Statute
A. G.L.c. 223A, §3(a): Transacting Business
The long-arm statute allows a court to exercise personal jurisdiction over a nonresident defendant if plaintiffs cause of action arose from defendant’s business transactions in Massachusetts. G.L.c. 223A, §3(a). “Transacting business,” within the meaning of G.L.c. 223A, §3(a), is broadly construed to include activity which is personal, private, or commercial. Johnson v. Witkowski, 30 Mass.App.Ct. 697, 713 (1991). “[GJenerally the purposeful and successful solicitation of business from the resident of the Commonwealth by defendants or its agent will suffice . . .’’ Tatro, 416 Mass. at 767.
Here, plaintiffs allege that defendants’ participation in a Massachusetts-registered partnership satisfies G.L.c. 223A, §3(a). BSB is a registered Massachusetts general partnership based in Rockland, Massachusetts, formed to produce, market, and sell computerized navigation charts from its Massachusetts headquarters. It is unclear from the record whether BSB actually produced, marketed, or sold any products during the time the partnership operated.
Defendants do not dispute that BSB was formed pursuant to Massachusetts law, but they argue that they were not present in Massachusetts when the partnership was formed and did not transact business, either before or after the partnership’s formation, within Massachusetts. In an analogous case, however, a corporation incorporated under Massachusetts law and operating in Massachusetts was considered “transacting business” within the meaning of G.L.c. 223A, §3(a). Tucker Anthony Management Corp. v. Holden, 716 F.Supp. 716 (D. Puerto Rico 1989).
Here, BSB is a registered partnership under Massachusetts law. BMG I is one of the three partners that formed BSB. The partners agreed to transact business from the partnership headquarters in Rockland, Massachusetts. The affidavits also indicate that the BSB partnership was operating as a business at the time the defendants attempted to alienate their partnership interest. These facts strongly suggest that defendants *660 transacted business in Massachusetts within the meaning of G.L.c. 223A, §3(a).
In other cases, “[w]here the nonresident defendants’ contacts with Massachusetts had substantial commercial consequence in this state, personal jurisdiction was found, notwithstanding the absence of actual physical presence in Massachusetts.” Carlson Corp. v. University of Vermont, 380 Mass. 102, 107 (1980). BMG I actively and deliberately participated in the partnership, therefore BMG I’s conduct was more than a random or isolated contact. See Tatro, 416 Mass. at 767.
The existence of a Massachusetts partnership is a salient fact, but there are other facts which also support an exercise of personal jurisdiction over the defendants here. The BSB partnership agreement included a choice of law provision that any disputes between partners would be governed by Massachusetts partnership law. Choice of law provisions provide another basis for asserting personal jurisdiction over non-resident defendants, and show that a contract has a substantial connection to the forum state. Burger King v. Rudzewicz, 471 U.S. 462, 482 (1985). See also, Johnson, 30 Mass.App.Ct. at 713-15 (a nonresident defendant’s signing in Massachusetts of a document pertaining to the administration of a Massachusetts trust had transacted business within the meaning of G.L.c. 223A, §(3)(a)). Although the partnership agreement at issue here was not signed by defendants in Massachusetts, it relates directly to a Massachusetts general partnership. The agreement purporting to convey BMG Chart’s stock to Pinpoint reiterated that BSB was a Massachusetts general partnership. Accordingly, the court concludes defendants deliberately associated themselves with plaintiffs for commercial gain and thus transacted business within the Commonwealth.
Whether this cause of action arose from defendants’ conduct in Massachusetts presents another question. Although defendants signed the partnership agreement in Maine, the partnership was headquartered in Massachusetts and performed business activities here. Under Massachusetts partnership law, a partner is an agent of the partnership and may be liable for the debts and obligations of another partner. See G.L.c. 108A, §§9, 15. Thus, the partnership agreement imposed a fiduciary duty upon the defendants, and the defendants were aware that they could be subject to suit in Massachusetts were they to breach the partnership agreement. See, e.g., Phillips v. State of Rhode Island, 4 Mass. L. Rptr. 104, 1995 WL 389919 (Mass. Super. 1995) (state of Rhode Island subject to personal jurisdiction in Massachusetts after contracting with Massachusetts plaintiffs to form Massachusetts partnership).
When it became apparent to the defendants that BBA and Sewall would not accept Pinpoint as a partner, the defendants made deliberate efforts to convince BBA to accept Pinpoint as a partner. As part of those negotiations, Jeffrey Cole initiated and maintained telephone contact with Massachusetts-based BBA. Jeffrey Cole also sent at least one letter to BBA president James M. Owen, and another letter to BBA’s counsel, both in Massachusetts, attempting to convince BBA that Pinpoint should replace BMG I as a BSB partner. Frequent oral and written contacts may provide a sufficient basis upon which personal jurisdiction may be premised. Haddad v. Taylor, 32 Mass.App.Ct. 332, 335 (1992); Phillips, 4 MASS. L. Rptr. 104, 1995 WL 389919 (telephone and written contact with other partners assisted court in decision to exercise personal jurisdiction over out-of-state partner). The court concludes that jurisdiction over defendant BMG II, as corporate successor to BMG I, is appropriate under G.L.c. 223A, §3(a).
As to the Coles, the court concludes that they too are subject to in personam jurisdiction in Massachusetts because their conduct arose from the same activities. While the general rule is that personal jurisdiction over a corporation does not automatically confer personal jurisdiction over its officer,[2] a corporate officer’s active participation in a corporation’s in-state activities may supply a basis for personal jurisdiction. Kleinerman v. Morse, 26 Mass.App.Ct. 819, 824 (1989).
Unlike the corporate form of business, however, partners may be personally liable for the debts of the partnership. G.L.c. 108A, et seq. BMG I was a small, closely held corporation with only seven employees including the Coles. The Coles, acting as officers of BMG I, actively participated in the transfer of its BSB partnership interest to Pinpoint through the creation of BMG Chart and BMG II. The Coles were also officers and directors of BMG Chart and BMG II. The Coles’ entrepreneurial activities in forming a partnership suggests they intentionally sought commercial benefit in Massachusetts. The Coles’ attempts to transfer the partnership interest through BMG Chart while continuing their business under BMG II also indicates that they hoped to benefit from this transaction. Since the defendants’ attempted alienation of BMG I’s partnership interest gave rise to the subject matter of this suit, the court may assert personal jurisdiction over the Coles. See Maker v. Bermingham, 32 Mass.App.Ct. 971, 972-73 (1992) (personal jurisdiction over partner-husband permitted assertion of personal jurisdiction over partner-wife).
B. G.L.c. 223A, §3(c) & (d): Tortious Conduct
Although plaintiffs have met their burden under G.L.c. 223A, §3(a), they offer additional grounds for personal jurisdiction under G.L.c. 223A, §3(c) and (d). General Laws c. 223A, §3(c) provides that a Massachusetts court may assert personal jurisdiction over a nonresident defendant if the defendant “caus[ed] tortious injury by act or omission in this commonwealth." This section of the long-arm statue requires that *661 defendants’ tortious conduct occur in Massachusetts, rather than simply affect a Massachusetts resident. Spring v. Geriatric Auth’y of Holyoke, 394 Mass. 274, 292 (1985).
Plaintiffs argue that defendants intentionally interfered with their contractual relationship with BMG I in Massachusetts, where the partnership conducted its business. Thus, they assert that defendants’ conduct occurred in Massachusetts. See Johnson, 30 Mass.App.Ct. at 714 (nonresident defendants subject to personal jurisdiction pursuant to G.L.c. 223A, §3(c), because they breached their fiduciary duty while working in Massachusetts).
This court disagrees. Based on the affidavits and depositions, the court concludes that defendants’ allegedly tortious conduct occurred outside of Massachusetts. Therefore, G.L.c. 223A, §3(c) is inapplicable. Defendants solicited Pinpoint, a Washington, D.C., company, to purchase its partnership share outside of Massachusetts. Defendants formed BMG II and BMG Chart as Maine corporations, fraudulently or not, in order to facilitate the transfer of BMG I’s partnership interest. This also occurred outside of Massachusetts. The only conduct that occurred within Massachusetts was Jeffrey Cole’s letters and telephone calls to BBA relating to BMG I’s attempts to alienate its partnership interests. The plaintiffs’ complaint, however, rests on the allegation that BMG Chart and BMG II were formed fraudulently in order to facilitate the transfer of BMG I’s partnership interest. Accordingly, this court concludes that the alleged tortious conduct of defendants occurred outside of Massachusetts and G.L.c. 223A, §3(c) does not apply.
General Laws c. 223A, §3(d) permits an assertion of personal jurisdiction over a nonresident defendant who has allegedly committed a tort affecting a Massachusetts resident. The court may assert its long-arm jurisdiction “[i]f the nonresident defendant caus[ed] tortious injury inside [Massachusetts] by an act or omission outside [Massachusetts] if he regularly does or solicits business, or engages in any persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in [Massachusetts]; . . .” G.L.c. 223A, §3(d).
Under this statute, the plaintiff must first demonstrate that the defendants’ act or omission caused a tortious injury inside Massachusetts. Cunningham v. Adrox, Inc., 40 Mass.App.Ct. 279, 281 (1996). Here, plaintiffs allege that the defendants’ efforts to transfer BMG I’s partnership share in BSB to Pinpoint violated the partnership agreement, a contractual relationship. They allege defendants intentionally interfered with this contractual relationship. Thus, the plaintiffs’ allegations of economic injury satisfies the first requirement of G.L.c. 223A, §3(d). Keds Corp. v. Renee Inter. Trading Corp., 888 F.2d 215, 218 (1st Cir. 1989).
Next, the plaintiffs must show that the defendants either (1) conducted or solicited business in Massachusetts; (2) engaged in any other persistent course of conduct; (3) or derived substantial revenues from goods used or consumed or services rendered in Massachusetts. G.L.c. 223A, §3(d). Here, the defendants’ conduct relating to the formation of the BSB partnership and the defendants’ allegedly fraudulent efforts to alienate BMG I’s partnership interest, as discussed above, demonstrate that the defendants solicited business and/or engaged in a persistent course of conduct in Massachusetts.
In addition, the defendants admit that one percent of BMG II’s revenues, or up to 12 product sales per year, are generated in Massachusetts. They claim, however, that this is an insignificant amount upon which to premise personal jurisdiction under the “substantial revenues” test. However, the “substantial revenues” test does not require an absolute amount. Heins v. Wilhelm Loh Wetzlage Optical Machinery GmbH, 26 Mass.App.Ct. 14, review denied, 402 Mass. 1109 (1988). See Mark v. Obear & Sons, Inc., 313 F.Supp. 373, 376 (D.Mass. 1970) (.5 percent of sales revenue satisfied the “substantial revenues” test). Accordingly, the court concludes that defendants did derive substantial revenues from BMG I’s products sold in Massachusetts, thereby satisfying the jurisdictional requirements of G.L.c. 223A, §3(d).
In addition, defendants advertised BMG I products in Massachusetts over the World Wide Web and through national trade magazines. Advertising directed toward Massachusetts, when combined with other facts, may provide additional evidence that defendant deliberately benefitted from their in-state activities. Although this by itself would be insufficient for an assertion of personal jurisdiction, when considered with other factors, it may assist a court in its personal jurisdiction analysis. See, e.g., Gunner v. Elmwood Dodge, Inc., 24 Mass.App.Ct. 96, 98-100 (1987). Here, the advertising provides additional support the court’s exercise of personal jurisdiction over the defendants.
In sum, the plaintiffs have established that the defendants have significant contacts with Massachusetts under G.L.c. 223A, §3(a) and (d). These contacts provide a sufficient basis for the court’s assertion of personal jurisdiction under the first prong of the personal jurisdiction analysis.
II. Due Process
The court’s next inquiry is whether maintaining personal jurisdiction over the defendants “offend[s] ‘traditional notions of fair play and substantial justice,’ ” International Shoe Co. v. Washington, 326 U.S. 310, 316 (1940), quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940). Among the factors the court must consider are (1) the burden of defending in the forum state; (2) the forum state’s interest in adjudicating the dispute; (3) the plaintiffs interest in obtaining convenient and effective relief; (4) the judicial system’s interest in obtaining the most effective resolution of *662 the controversy; and (5) the common interest of all sovereigns in promoting substantive social policies. Id.
Here, requiring the defendants to defend this action in Massachusetts comports with due process. The defendants deliberately formed a Massachusetts partnership (with another Massachusetts corporation) that was to be governed by the substantive law of Massachusetts. Under Massachusetts law, partners owe a fiduciary duty to each other and may be liable to other partners. See G.L.c. 108A, §§9, 15.[3] Thus, it was foreseeable that the defendants could be subject to a lawsuit in Massachusetts. In addition, BBA is a Massachusetts corporation and BSB is a Massachusetts partnership; therefore Massachusetts has a strong interest in retaining jurisdiction over this action. See Carlson Corp., 380 Mass. at 108. Because the Agreement is to be governed by Massachusetts substantive law, Massachusetts would be the forum best able to apply the law specified in the Agreement. Finally, compelling the defendants to defend this action in Massachusetts would not be too onerous. Travel between Maine and Massachusetts, two New England states, would present little difficulty for the defendants. See, e.g., Faigin v. Kelly, 919 F.Supp. 526 (D.N.H. 1996) (travel between Buffalo, New York, and New Hampshire held not to be burdensome for defendant); Phillips, 1995 WL 389919 (travel from Rhode Island to Massachusetts not burdensome). Accordingly, compelling the defendants to defend this action in Massachusetts is not constitutionally unreasonable and is consistent with the due process requirements of International Shoe Co., 326 U.S. at 310.
ORDER
For the foregoing reasons, Defendants Eva Cole, Jeffrey Cole and Blue Marble Group, Inc.’s Motion to Dismiss for Lack of Personal Jurisdiction is DENIED.

 Defendants BMG Chart Products, Inc., and Blue Marble Geographies, Inc., have not filed motions to dismiss for lack of personal jurisdiction under Mass.R.Civ.P. 12(b)(2). However, it is apparent that those entities are the same as the moving defendants (Eva M. Cole, Jeffrey B. Cole, and Blue Marble Group, Inc.) for purposes of personal jurisdiction; therefore, this order relates to all defendants with the exception of Pinpoint Systems International, L.L.C., and John Does 1-10.

 See also My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614 (1968) (discussing the protection afforded by the corporate form).

 The same is true under the Maine Partnership Act, Maine Rev. Stat. Ann., Title 31, et seq. (West 1998).