Troy, Paul E., J.
The plaintiffs, Kevin and Kimberly Berry (the “Berrys”), have filed this personal injury and breach of contract case against the defendant, Thorsten Cook (“Cook”). The Berrys bring a claim for breach of contract; Mr. Berry brings claims for negligence and breach of the implied warranty of habitability; and Mrs. Berry brings claims for negligent infliction of emotional distress and loss of consortium. Cook has moved to dismiss this action based on lack of personal jurisdiction pursuant to Mass.R.Civ.P. 12(b)(2). For the following reasons, Cook’s motion is DENIED.
BACKGROUND
The following is a summary of facts contained in the pleadings and affidavits provided by the parties, taken as true for the purposes of Rule 12(b)(2). The Berrys are Massachusetts residents. Cook is a Connecticut resident, *98 who has never lived in Massachusetts, does not own or rent property in Massachusetts, has never owned a Massachusetts business, and has never paid taxes in Massachusetts. Cook owns and rents the property-known as “South Sound Villa” (the ‘Villa”), which is located at South Sound, Virgin Gorda, British Virgin Islands.
On September 16,2008, the Berrys were at the Villa for their honeymoon pursuant to a rental agreement with Cook. Cook and/or his agents had installed a backup power generator at the Villa prior to the Berrys’ stay. Cook and/or his agents had inspected, serviced, and/or maintained this generator. Cook provided the Berrys instructions on operating the generator. When the municipally-supplied electricity went out at the Villa, Mr. Berry attempted to start the generator in accordance with Cook’s instructions. The generator shocked Mr. Berry, causing severe injuries. The Berrys subsequently brought this lawsuit against Cook.
Cook advertises the Villa through various web-based sources. Cook advertises on his own website, www.au-tomationrentals.com, which displays information about renting the Villa.[2] Interested parties cannot rent the Villa directly through Cook’s website, and are instead directed to contact Cook via telephone, fax, or email. Cook also advertises the Villa with Flip Key of Boston, Massachusetts and Trip Advisor of Needham, Massachusetts.[3] The Berrys aver that potential renters can book the Villa directly on Flip Key’s website. Cook, on the other hand, states that while Flip Key does allow users to book some rentals through its site, he did riot pay for such a service for the Villa. Cook maintains that Flip Key users could only view information about the Villa, such as pictures, description of amenities, and available dates. Finally, Cook uses other worldwide sites that have short listings about the Villa, including VRBO, TravelPod, and Vacationing, and www.VacationHomeRentals.com. According to Cook, the information about the Villa on these websites is “intended to reach the general public so that they will come rent [his] property.” Cook does not solicit his past rental customers for future rentals and does not update them about the Villa.
The Berrys learned about the Villa from www.VacationHomeRentals.com. However, the Berrys did not book the Villa through this website or any of the other websites that Cook used to advertise the Villa. Instead, Mrs. Berry, while in Massachusetts, communicated with Cook over the telephone or via email at least twenty times to negotiate the rental of the Villa. Cook then sent the Berrys a partially executed contract (“Lease Agreement”) by mail. The Berrys signed the Lease Agreement in Massachusetts, kept one fully executed copy and mailed the other back to Cook in Connecticut, and sent Cook a damage deposit check drawn from a Massachusetts bank account. After the incident at the Villa, Cook mailed the Berrys a letter and a check for the amount of the damage deposit and a refund for the pro-rated time that the Berrys did not occupy the Villa. In addition to the Berrys, Cook has rented the Villa to two Massachusetts residents, whom the Berrys contacted prior to entering into the Lease Agreement.
DISCUSSION
When a defendant brings a motion to dismiss pursuant to Mass.RCiv.P. 12(b)(2), the plaintiff has the burden to establish facts over which personal jurisdiction can be predicated. Intech, Inc. v. Triple “C” Marine Salvage, Inc., 444 Mass. 122, 125 (2005); Morris v. UNUM Life Ins. Co. of America 66 Mass.App.Ct. 716, 721 (2006); Cepeda v. Kass, 62 Mass.App.Ct. 732, 737 (2004). “The most fypical method of resolving a motion to dismiss for lack of personal jurisdiction allows the court ‘to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.’ ” Cepeda, 62 Mass.App.Ct. at 737 (stating that the court forgoes a full evidentiary hearing, reserving the issue of personal jurisdiction for final determination at trial), quoting Boit v. Gar-Tec Prod., Inc, 967 F.2d 671, 675 (IstCir. 1992). “[U]nder the prima facie standard, we take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiffs jurisdictional claim.” Cepeda 62 Mass.App.Ct. at 737, quoting Massachusetts Sch. of Law at Andover, Inc. v. American Bar. Assn. 142 F.3d 26, 34 (1st Cir. 1998). This court may only exercise personal jurisdiction over Cook if: (1) the Berrys have alleged sufficient facts to confer jurisdiction under the Massachusetts Longarm Statute, G.L.c. 223A, §3, and (2) Cook has sufficient minimum contacts with Massachusetts so as not to offend “traditional notions of fair play and substantial justice.” See REMF Corp. v. Miranda 60 Mass.App.Ct. 905, 905 (2004).
I. Longarm Statute
Cook maintains that the Berrys have not demonstrated that Cook’s conduct in connection with his advertising and rental of the Villa falls under the Massachusetts Longarm Statute’s requirement of “transacting business within the Commonwealth.” See G.L.c. 223A, §3(a).[4] “For jurisdiction to exist under §3(a), the facts must satisfy two requirements — the defendant must have transacted business in Massachusetts, and the plaintiffs claim must have arisen from the transaction of business by the defendant.” Intech, Inc., 444 Mass. at 126, quoting Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). Courts have construed the “transacting business” language of §3(a) broadly. LaForest v. Ameriquest Mortg. Co., 383 F.Sup.2d 278, 283 (D.Mass. 2005) (citations omitted). A nonresident defendant need not be physically present in Massachusetts to have transacted business in the state. Id “[A]ny purposeful acts by an individual, whether personal, private, or commercial” can be considered “transacting business.” Ross v. Ross, 371 Mass. 439, 441 (1976).
The §3(a) requirement may be satisfied where a nonresident defendant’s contact with the state is minimal. See Tatro, 416 Mass. at 767-69 (plaintiffs rental of *99 Florida hotel room while in Massachusetts sufficient to establish personal jurisdiction, where that hotel continuously solicited Massachusetts organizations for business, including one of which the plaintiff was a member); Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979) (the defendant’s making telephone calls, mailing letters, and accepting checks drawn from Massachusetts bank is sufficient to constitute transaction of business). Although execution of a contract in Massachusetts usually constitutes transaction of business in the Commonwealth, see Carlson Corp. v. University of Vermont, 380 Mass. 102, 105 (1980), isolated contacts “void of any purposeful intent” to benefit from the activities within the forum state do not confer jurisdiction under §3(a). Droukas v. Drivers Training Academy, Inc., 375 Mass. 149, 153-54 (1978) (nonresident’s advertisement in magazine of national circulation; Massachusetts resident’s telephone call, order, and payment; and nonresident’s mailing of confirmation letter fail to support jurisdiction under §3(a)).
Although the Berrys rely heavily on Cook’s various web-based advertisements, personal jurisdiction in this case does not turn solely on Cook’s advertisement of information about the Villa on various worldwide websites and the Berrys’ visit to www.VacationHome-Rentals.com. Cook’s web-based contacts, without more, would not constitute transaction of business in Massachusetts under §3(a). See McBee v. Delica Co., Ltd., 417 F.3d 107, 124 (D.Mass. 2005) (exercise of personal jurisdiction based on the existence of a website alone “would ‘eviscerate’ the limits of state’s jurisdiction over out-of-state or foreign defendants”); see also Comer v. Comer, 295 F.Sup.2d 201, 209-10 (D.Mass. 2003) (law firm’s passive website, even when combined with its listing on Martindale-Hubbell’s website, does not constitute transacting business within §3 (a) or of “purposefully availing” itself as required by due process); Normand v. Royal Indus., Inc., 2006 WL 4119643, at *1-3 (Mass.Super. 2006) (Muse, J.) (chair frame manufacturer did not transact business for §3(a) purposes, where it merely maintained a website accessible to Massachusetts residents, but did not advertise or solicit business in Massachusetts).
Massachusetts courts have moved away from a personal jurisdiction analysis based on a website’s interactivity level, as established in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Sup. 1119, 1124 (W.D.Pa. 1997), toward considering web-based contacts with a forum state as a factor in the personal jurisdiction analysis, if such contacts are directed at the forum state. See Back Bay Farm, LLC v. Collucio, 230 F.Sup.2d 176, 185 n.10 (D.Mass. 2002) (citations omitted) (expressing reluctance to rely solely on the interactivity framework established in Zippo, and rejecting the proposition that inclusion of links and an online calculator on an otherwise passive website would create personal jurisdiction over its owner); Better Boating Ass’n, Inc. v. BMG Charts Prods., Inc., 8 Mass. L. Rptr. 658, 1998 WL 408976 at *6 (Mass.Super. 1998) (Lauriat, J.) (considering defendant’s internet advertisement of its products, which was directed at Massachusetts residents, as a factor indicating that defendant intended to benefit from the activities in the forum state). See also Gunner v. Elmwood Dodge, Inc., 24 Mass.App.Ct. 96, 99 (1987) (“Advertisements in general trade magazines which happen to circulate in the forum State, but which are not aimed at customers in a particular area, do not effect the requisite minimum contact”).
Here, Cook’s web-based contacts with Massachusetts are passive in nature, providing only information about rental of the Villa, with the exception of the Flip Key website. Because a dispute of fact exists, the court accepts that potential customers were able to book the Villa directly through Flip Key and that the site was interactive for the purposes of this motion. Cook’s advertisement of the Villa through the interactive Flip Key website, however, does not confer personal jurisdiction over Cook because there is no evidence that Flip Key’s posting of the Villa specifically targeted Massachusetts residents.[5]
At issue in this case then is whether specific personal jurisdiction arises from Cook’s web-based advertisements when viewed together with his traditional contacts, including Cook’s numerous telephone calls and emails, Cook’s mailing of the partially executed Lease Agreement to the Berrys in Massachusetts, the Berrys’ execution and return of that document via mail, and Cook’s acceptance of a damage deposit check drawn from a Massachusetts bank account. New Massachusetts courts have examined the application of §3(a) in circumstances implicating both web-based and traditional interactions. Compare Island Oasis Frozen Cocktail Co., Inc. v. Florida Bulk Sales, Inc., 18 Mass. L. Rptr. 393, 2004 WL 557300 at *1 (Mass.Super. 2004) (Hely, J.) (maintenance of a website accessible to Massachusetts residents that did not influence the plaintiff’s purchase, Florida corporation’s phone call, invoice, and email to Massachusetts resident, and Florida corporation’s receipt of funds from Massachusetts resident did not satisfy §§3(a) or (d)) with Massachusetts Web Printing v. Nutfield Pub., LLC, 25 Mass. L. Rptr. 10, 2008 WL 5216323, at *1-2 (Mass.Super. 2008) (Roche, J.) (Massachusetts defendant’s regular telephone, email, and fax contact with the plaintiff over a fifteen-month period during which the defendant printed plaintiffs newspapers constituted transacting business for §3(a) purposes).[6]
The contacts present in this case demonstrate that Cook was transacting business in Massachusetts for §3(a) purposes. The facts establish a pattern of negotiation between the Berrys and Cook concerning rental of the Villa, consisting of over twenty telephone and email communications; the mailing of a partially executed Lease Agreement to the Berrys; the Berrys’ execution of the Lease Agreement in Massachusetts; Cook’s acceptance of the damage deposit check drawn from a Massachusetts bank; Cook’s advertisements on several *100 websites that were accessible to Massachusetts residents, one of which prompted the Berrys to rent the Villa; and Cook’s rental of the Villa to two other Massachusetts residents, whom the Berrys contacted prior to entering into the Lease Agreement. Cook’s contacts with the Berrys lie somewhere between those present during the fifteen-month business relationship between the parties in Massachusetts Web Printing and those with the telephone calls, mailed documents, and exchange of money present in Good Hope Indus., Inc. Additionally, Cook’s continuous contact with the Berrys was instrumental in the negotiation and formation of the Lease Agreement with the Berrys, and as such, distinguishable from the out-of-state defendant’s isolated contacts with the passive buyers in Droukas and Island Oasis Frozen Cocktail Co. Cook’s continuous traditional and web-based contact with the Berrys, therefore, constitutes transaction of business within the meaning of §3(a).
The court’s inquiry into the Longarm Statute does not end with this determination. The Berrys’ lawsuit must also arise from Cook’s transaction of business in Massachusetts to satisfy the Longarm Statute. The Berrys’ breach of contract, breach of the implied warranty of habitability, and negligence-based claims all arise from Cook’s web-based advertisements, Cook’s continuous telephone calls and emails, his mailing and the Berrys’ execution of the Lease Agreement, and Cook’s acceptance of the Berry’s check. As such, the Berrys have met their burden of demonstrating both requirements of §3(a) of the Massachusetts Long Arm Statute.
II. Constitutional Requirements
The Berrys also succeed in demonstrating that Cook’s contacts with Massachusetts fall within the Constitutional limits placed on the exercise of personal jurisdiction. To exercise specific personal jurisdiction over an out-of-state resident, constitutional due process requires “some minimum contact with the Commonwealth which resulted from an affirmative, intentional act of the defendant, such that it is fair and reasonable to require the defendant to come into the State to defend the action.” Cepeda, 62 Mass.App.Ct. at 736. In conducting the due process inquiry, the court must first determine whether “the defendant purposefully avails itself of the privilege of conducting activities in the forum state.” Hanson v. Denckla, 357 U.S. 235, 253 (1958). Additionally, the plaintiffs’ action must arise from or relate to the defendant’s activity in the forum state. See Burger King v. Rudzewicz, 471 U.S. 462, 472 (1985). If the defendant’s activity satisfies the first two criteria, the court will consider whether its exercise of personal jurisdiction over the defendant would “offend traditional notions of fair play and substantial justice.” Asahi Metal Industry. Co. v. Superior Court, 480 U.S. 102, 113 (1987).
A. Purposeful Availment & Relatedness
For the same reasons stated above, the Berrys have shown that Cook purposely availed himself of the privilege of conducting business within Massachusetts even though Cook had a limited connection to Massachusetts. Further, all of the Berrys’ claims arise directly out of Cook’s various contacts with the Berrys during the Lease Agreement’s negotiation and execution process.
B. Fair Play & Substantial Justice
Here, personal jurisdiction over Cook comports with the traditional notions of fair play and substantial justice. To determine whether fair play and substantial justice are satisfied, the court considers Massachusetts’ interest in adjudicating the dispute, the burden on the defendant in litigating in Massachusetts, and the plaintiffs interest in obtaining convenient and effective relief. Bulldog Investors v. Sec’y, 457 Mass. 210, 218 (2010) (detemrining that Commonwealth had significant interest in adjudicating violations of its securities regulations and that this interest outweighed the burden of the out-of-state defendant in litigating in Massachusetts), citing Burger King Corp., 471 U.S. at 476-77. See also Tatro, 416 Mass. at 772-73 (determining that the plaintiffs lack of resources would pose a substantial barrier to her bringing the claim in the out-of-state defendant’s forum, but defendant corporation would not be overburdened by litigating in Massachusetts). Here, the Commonwealth has an interest in assuring that out-of-state individuals repeatedly entering into contractual business relationships with Massachusetts residents do so lawfully. Moreover, litigation outside of Massachusetts would greatly inconvenience Mr. Beny, who lacks financial resources due to his inability to work following the incident, and cannot travel without suffering from pain related to the incident. These factors outweigh the burden placed on Cook in defending the Berrys’ action in Massachusetts.
ORDER
For the reasons stated above, the court ORDERS that the defendant’s Motion to Dismiss be DENIED.

Cook’s site also recommends certain accommodations or services to be used for those who choose to stay at the Villa.

Cook spent most of his money advertising the Villa on Flip Key’s services.

Although the Berrys initially suggested that additional sections of the Longarm Statute confer jurisdiction over Cook, their memorandum of law makes clear that they only proceed under §3(a).

The Berrys also attach significance to the fact that two of the websites on which Cook advertised the Villa are owned by Massachusetts businesses. The Berrys have cited no law supporting the proposition that the physical location of a business operating the website on which a non-resident defendant advertises factors into the personal jurisdiction analysis, and the court does not consider the location of these businesses as part of its personal jurisdiction inquiry.

Courts have determined that a non-resident defendant’s web-based contacts, if directed at the Commonwealth’s residents, can constitute transacting business or regularly soliciting business within the Commonwealth under §3(d) of the Massachusetts Longarm Statute. See City of Boston v. Smith & Wesson Corp., 2000 WL 34018326 at *16 (Mass.Super. 2000) (Hinkle, J.) (determining that non-resident business *101 that solicited business through direct mailing, marketing campaigns, newsletters and websites was transacting business or engaging in a regular course of business within the meaning of §3(d)); Hasbro, Inc. v. Clue Computing, Inc., 994 F.Sup. 34, 39 (D.Mass. 1997) (deciding that computer company regularly solicited business within the meaning of §3(d), where it maintained a website accessible in Massachusetts that listed another prominent Massachusetts company as one of its new customers): Northern Light Tech, Inc. v. Northern Lights Club, 97 F.Sup.2d 96, 105-06 (D.Mass. 2000) (same where defendant operated website that allowed users to post links or advertisements).