Neel, J.
Plaintiff Michelle Durette (“plaintiff’), brought this action against defendants International Cancer Screening Laboratories, Inc. (“ICSL”) and Sharon K. Rosenthal, M.D., (“Rosenthal”) claiming that they negligently delayed the discovery of her cervical cancer. This matter is before the court on Rosenthal’s motion, pursuant to Mass.R.Civ. P. 12(b)(2), to dismiss for lack of personal jurisdiction. After hearing, and for the reasons set forth below, Rosenthal’s motion is denied.
FACTS
After consideration of the affidavits, deposition transcripts, and other materials submitted, and for purposes of this motion only, I make the following findings of fact. Heins v. Wilhelm Loh Wetzlar Optical *605 Machinery GMBH & Co. KG, 26 Mass.App.Ct. 14, 17 (1988).
In March 1990, a pap smear taken from plaintiff in a Massachusetts hospital was sent to ICSL in Texas to be screened for cancer. ICSL returned a report stating that plaintiffs pap smear was negative. In September 1991, another pap smear revealed that plaintiff had cervical cancer, requiring her to undergo extensive surgery. Plaintiff claims that ICSL negligently misinterpreted her March 1990 pap smear, and sues ICSL and its medical director at the time, Rosenthal.
Plaintiff is a Massachusetts resident who received all relevant medical treatment in Massachusetts. All work for the screening of plaintiffs pap smear, however, took place in Texas, and was performed by ICSL. Rosenthal, a resident of Texas, was a consultant to ICSL, under contract, from 1984 until August 1990. Rosenthal was not an employee of ICSL; rather, she was an independent contractor who acted as ICSL’s medical director.[2] Rosenthal was responsible for all medical operations of the lab, including quality control and supervision. Rosenthal personally reviewed only those pap smears which had been determined to be abnormal. Because plaintiffs March 1990 pap smear had been determined to be normal, Rosenthal did not personally review that sample. Rosenthal’s consulting fee of $72,000 per year (Boughton Deposition at 40) was paid by ICSL, which derived substantial revenues from services she and it rendered in Massachusetts.
Rosenthal’s name appeared on all reports generated by ICSL for patients in Massachusetts, including approximately 20,000 pap smear reports generated in 1989 and 1990. On the report of plaintiffs March 1990 pap smear, Rosenthal’s name appears, computer generated, as “S.K. Rosenthal, M.D., Pathologist.” Because Rosenthal reviewed only the abnormal pap smear samples and shared the work with two part-time doctors, it is uncertain how many Massachusetts pap smear samples she personally reviewed. Plaintiff estimates that Rosenthal personally examined several hundred pap smears from Massachusetts each year, and I so find.[3]
Examining a pap smear and reporting findings is a medical service. Rosenthal was aware that ICSL “worked on a nationwide basis” (Rosenthal Deposition at 35); she was also aware that she was “doing things in San Antonio that provided services to people in other states.” Id. at 38. In 1988 Rosenthal inquired of her insurance company to confirm that she had coverage for all of the continental states for work she did in Texas; she was concerned about having such coverage because she was “providing medical services to patients in those areas.” Id. at 37, 118.
DISCUSSION
Plaintiff bears the burden of showing through pleadings, affidavits, and other competent evidence that personal jurisdiction exists. See Ealing Corp. v. Harrods, Inc., 790 F.2d 978, 979 (1st Cir. 1986); Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978). Two questions must be answered affirmatively in order for this court properly to exercise personal jurisdiction over Rosenthal: “(1) Is the assertion of jurisdiction authorized by the [Massachusetts longarm] statute, and (2) if authorized, is the exercise of jurisdiction under State law consistent with basic due process requirements mandated by the United States Constitution?” Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979); BondLeather Co. v. O.T. Shoe Mfg. Co., 764 F.2d 928, 981 (1st Cir. 1985).
A. Longarm Statute
General Laws c. 223A, §3(d) authorizes a court to exercise personal jurisdiction over a person as to a cause of action arising from the person’s:
causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.
In this case, plaintiff has suffered damages in Massachusetts resulting from an alleged negligent failure in Texas to diagnose her cervical cancer. Plaintiff alleges that Rosenthal, as medical director of ICSL, had a duty properly to monitor, supervise, and train ICSL employees and to maintain quality control, and that she was negligent in performing those duties. Plaintiffs allegations of Rosenthal’s negligence state a prima facie case. See Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 907 (1st Cir. 1980). The statutory issue is whether Rosenthal regularly does or solicits business, has engaged “in any other persistent course of conduct,” or derives substantial revenue from services rendered, in Massachusetts.[4]
“Literal satisfaction of the explicit statutory requirements is sufficient to support the assertion of jurisdiction provided that the statute’s implicit due process limitations are not offended.” Heins v. Wilhelm Loh Wetzlar Optical Machinery, supra at 20. In this case, Rosenthal authorized ICSL’s use of her name on the tens of thousands of the Massachusetts pap smear reports generated by ICSL during her tenure as medical director; through those reports, she arguably provided medical services to tens of thousands of Massachusetts residents over a six year period. In any event, Rosenthal personally examined and reported on hundreds or thousands of abnormal pap smears from Massachusetts patients, and in so doing provided medical services to those patients in Massachusetts. Her actions satisfy the literal requirements of the “persistent course of conduct” language of §3(d).[5] Accordingly, the court holds that the exercise of personal jurisdiction over defendant Rosenthal is authorized by the Massachusetts longarm statute.[6]
*606 B. Due Process
Having determined that Rosenthal’s conduct satisfies one of the statutory bases of jurisdiction under the Iongarm statute, the court must decide whether the exercise of jurisdiction would satisfy the Fourteenth Amendment due process test of “minimum contacts.” Tatro v. Manor Care Inc., 416 Mass. 763, 767 (1994). Jurisdiction is proper if defendant has sufficient contacts with the forum state, so that the lawsuit would not offend “traditional notions of fair play and substantial justice.” International Shoe, 326 U.S. 310, 316 (1945). The defendant must have purposefully availed herself of the “privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.” Hanson v. Denckla, 357 U.S. 235,253 (1958). The activities in the forum state must be of a nature which would allow a nonresident defendant to “reasonably anticipate being haled into court there.” World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980).
Personal jurisdiction may be either general or specific. General jurisdiction “exists when the litigation is not directly founded on the defendant’s forum based contacts, but the defendant has nevertheless engaged in continuous and systematic activify, unrelated to the suit, in the forum state.” Connecticut Nat’l Bank v. Hoover Treated Wood Products. Inc., 37 Mass.App.Ct. 231, 233 n. 6 (1994). In contrast, under specific personal jurisdiction, “the defendant must have transacted business in Massachusetts, and the plaintiffs claim must have arisen from those forum-based contacts.” Id. Subsection (d) of the Iongarm statute is predicated on general jurisdiction. Id.
A doctor who has “purposefully directed” his actions to the forum state by performing medical services through the mail for a patient in the forum state is subject to personal jurisdiction for negligence relating to those medical services. Kennedy v. Freeman, 919 F.2d 126, 129 (10th Cir. 1990).[7] The Kennedy court recognized that the forum state has a strong interest in deterring medical malpractice against its residents, and that doctors should not escape suit merely because they perform their service outside the forum state. Id. at 129-30. Although Kennedy was a specific jurisdiction case, this court concludes that the same reasoning should hold in a general jurisdiction case. Where a doctor, acting out of state, knowingly, continuously and systematically performs medical services for patients in the forum state, she has purposefully directed her activities to that state and should reasonably anticipate suit in that state. She may therefore be subject to general, as well as specific, jurisdiction.
In the present case, defendant personally examined pap smears from throughout the country, including Massachusetts. She allowed her name to be placed on all reports from ICSL, including those that went to Massachusetts. She knew that these reports rendered diagnoses to patients throughout the country, including those in Massachusetts. As a doctor, she undoubtedly knew of the significance of these reports, and that they would be the basis for further treatment or non treatment of patients. The court holds that Rosenthal’s continuous and systematic activify in Massachusetts was such that she should have reasonably anticipated being haled into court in this commonwealth. Accordingly, the court holds that due process is not offended by the exercise of personal jurisdiction over her.
ORDER
For the reasons stated above, it is hereby ORDERED that defendant Sharon K. Rosenthal’s motion to dismiss for lack of personal jurisdiction pursuant to Mass.R.Civ. P. 12(b)(2) is DENIED.

Rosenthal testified by deposition that beginning in 1984, “I was a consulting medical director. I was the physician over there. I was the only pathologist over there.” Rosenthal Deposition at 13. See also Robert Boughton, Jr. Deposition at 37.

Plaintiff estimates that 6.4% of the slides received by ICSL are abnormal and were subject to review by Rosenthal. Thus, of the approximately 20,000 pap smears from Massachusetts sent to ICSL in 1989-90, plaintiff concludes that Rosenthal examined approximately 1,300. Rosenthal notes that she did not review all the abnormal slides, sharing the work with two other doctors. Whatever the exact figures, it is reasonable to infer, for purposes of this motion, that Rosenthal personally examined several hundred pap smear samples from Massachusetts each year during her tenure as medical director of ICSL.

Plaintiff also argues that personal jurisdiction can be established under subsection 3(a) of the Iongarm statute, involving causes of action arising from a defendant’s “transacting any business” in Massachusetts. Because it finds jurisdiction under §3(d), the Court does not address this additional ground.

Contrary to defendant’s suggestion, there is no requirement under subsection (d) that plaintiffs cause of action arise from defendant’s persistent course of conduct in the commonwealth. The “arising from" language refers to the “causing tortious injury” in Massachusetts, not the “persistent course of conduct.”

Having so held, the Court need not determine whether her compensation as a consultant, derived in substantial portion from revenues which ICSL received for services she and it rendered in Massachusetts, also subjects her to personal jurisdiction here.

“We hold that [defendant] Freeman’s actions were sufficient to establish jurisdiction. While Freeman did not solicit [plaintiff] Kennedy’s business in Oklahoma, he did purposefully direct his actions there. He willingly accepted the sample from Oklahoma; he signed a report establishing the thickness of lesion; and he evidently sent his bill there. Freeman rendered his diagnosis to Kennedy in Oklahoma, through the mail, knowing its extreme significance and that it would be the basis of Kennedy’s further treatment there.”
Kennedy should be distinguished from cases where “doctors who have essentially local practices become involved in another state not as a result of their intention to do so, but rather as a result of the action of their out-of-state patients.” Id. at 129; see McAndrew v. Burnett, 374 F.Supp. 460 (M.D. Penn. 1974) (no jurisdiction in Pennsylvania over New York surgeon where alleged negligent surgery occurred in New York and decedent subsequently moved to and died in Pennsylvania).