MacLeod-Mancuso, Bonnie H., J.
INTRODUCTION
This matter is before the court on the motion of defendant, Dr. Jeffrey M. Brody (“Dr. Brody”) to dismiss the complaint filed by the plaintiff, Tebucky S. Jones (“PlaintifF) for lack of personal jurisdiction. Further, the court addresses the defendant, Shields MRI & CT of Rhode Island’s (“MRI/CTj[2] motion for summary judgment due to lack of personal jurisdiction. Plaintiff alleges that Dr. Brody and MRI/CT, as well as two of his treating physicians, misdiagnosed and negligently treated his injury, resulting in the premature end of his professional football career. For the following reasons, Dr. Brody’s motion to dismiss is ALLOWED and MRI/CTs motion for summary judgment is also ALLOWED.
BACKGROUND
In August 2006, the Plaintiff suffered an injury during a preseason football game for the New England Patriots. Following the injury, the Plaintiff sought medical treatment from Dr. Thomas Gill (“Dr. Gill”) and Dr. Betram Zarins (“Dr. Zarins”), both Massachusetts physicians. The Plaintiffs physicians referred him to MRI/CTs Rhode Island facility for three separate magnetic resonance imaging (MRI) scans. Rhode Island Medical Imaging (“RIMI”) actually performed the three separate scans at MRI/CTs facility on August 27, 2006, September 27, 2006, and December 8, 2006. *606 RIMI has a contractual agreement with MRI/CT to provide radiological services at MRI /CT’s Rhode Island facility.
After scheduling an appointment with a MRI/CT staff member via phone, the Plaintiff traveled to Rhode Island for the scans where he did not meet or interact with Dr. Brody. Some time after the third MRI scan was performed, another MRI/CT staff member brought the Plaintiffs file to Dr. Brody for review. He examined the scans and sent a medical report, which stated that Plaintiff had an “intact anterior cruciate ligament,” to the treating physicians, Dr. Gill and Dr. Zarins. Dr. Brody only examined the December 8, 2006 scan. Other doctors examined the previous scans, but Plaintiff does not allege that these other doctors acted negligently.
The Plaintiff later sought to contract with the Oakland Raiders. During the routine physical examination, the Raiders’ medical team concluded that the Plaintiff had a torn anterior cruciate ligament and posterior lateral corner injury. Consequently, the Oakland Raiders declined to sign the Plaintiff, essentially ending his professional football career. The Plaintiff then brought this action claiming that Dr. Brody negligently diagnosed him resulting in delayed treatment of the injury that ultimately cost him his career.
Dr. Brody brought his original motion to dismiss for lack of personal jurisdiction in April 2010. This court heard arguments on the motion and deferred any ruling in order to allow the Plaintiff ninety (90) days for jurisdictional discovery, during which Plaintiffs counsel deposed Dr. Brody. The discovery period has now ended and Dr. Brody’s Renewed Motion to Dismiss as well as MRI/CTs Motion for Summary Judgment are both before the court at this time.
DISCUSSION
I. Dr. Brody’s Renewed Motion to Dismiss for Lack of Personal Jurisdiction
A plaintiff facing a motion to dismiss under Mass.R.Civ.P. 12(b)(2) bears the burden of establishing facts sufficient to show that the court has personal jurisdiction over each defendant. Droukas v. Divers Training Acad., Inc., 375 Mass. 149, 151 (1978). The court assumes the specific facts alleged by the plaintiff to be true and construes them in the light most favorable to the plaintiffs jurisdictional claim. Cepeda v. Kass, 62 Mass.App.Ct. 732, 737 (2004).
“Generally, a claim of personal jurisdiction over a nonresident presents a two-fold inquiry: (1) is the assertion of jurisdiction authorized by the [Massachusetts long arm] statute, and (2) if authorized, is the exercise of jurisdiction under State law consistent with basic due process requirements mandated by the United States Constitution?” Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979). The plaintiff must satisfy both prongs in order to proceed. Id. at 6.
A. Specific Jurisdiction
Constitutionally, the Plaintiff must show that Dr. Brody had “such minimum contacts with the state that the maintenance of the suit does not offend traditional notions of fair play and justice.” Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). In order to exercise personal jurisdiction over the defendant the court must find that Dr. Brody purposefully availed himself of the privileges of conducting activities within Massachusetts. See Hanson v. Denckla, 357 U.S. 235, 253 (1958); Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 7 (1979).
Based on the facts alleged by the Plaintiff as discussed above, this court cannot exercise personal jurisdiction over Dr. Brody. Dr. Brody’s only contact with Massachusetts consists of mailing a medical report to the Plaintiffs treating physicians. Dr. Brody mailed the report in response to the Plaintiff voluntarily seeking treatment from MRI/CT and Dr. Brody in Rhode Island, where all relevant testing, evaluation and the creation of the medical report took place. Dr. Brody did not purposefully avail himself of the privileges of Massachusetts’ law when he sent the report to the Plaintiffs doctors in Massachusetts. Thus, this court finds that Dr. Brody has insufficient contacts with Massachusetts and therefore the exercise of personal jurisdiction over Dr. Brody does not meet the Constitutional due process requirements.
Additionally, the facts do not support the exercise of personal jurisdiction over Dr. Brody under the Massachusetts longarm statute, G.L.c. 223A, §3. Pursuant to G.L.c. 223A, §3 this court may exercise personal jurisdiction over the defendant as to a cause of action arising from the defendant “(a) transacting any business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injury by an act or omission in this commonwealth.” G.L.c. 223A, §3(a)-(c).[3]
Dr. Brody did not transact business in the Commonwealth. G.L.c. 223A, §3(a). Courts have generally construed “transacting any business" broadly, although an isolated and minor transaction would be insufficient without some purposeful and successful solicitation. Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). Dr. Brody’s single report in response to the Plaintiff seeking treatment in Rhode Island is insufficient contact to establish personal jurisdiction. In this case, the Plaintiff entered Rhode Island to undergo an MRI and Dr. Brody’s resulting contact with Massachusetts, mailing the results of that MRI to the treating physicians, was minor, isolated, and instigated by the Plaintiffs own actions outside of Massachusetts. The Plaintiff claims that Dr. Brody’s actions are part of a course of treatment in Massachusetts; however, this argument instills the actions of other physicians on Dr. Brody. The Plaintiff does not offer sufficient evidence to demonstrate that the mailing of the report amounted to a continuous activity rather than a sin *607 gle, isolated transaction. Dr. Brody did not purposefully intend to reach into Massachusetts to transact business; he merely sent a copy of his report to the treating physicians of a patient as part of his conducting business in Rhode Island.[4]
Dr. Brody also did not contract to supply services or things in the Commonwealth. G.L.c. 223A, §3(b). In fact, the only contract Dr. Brody entered into relevant to this case was his employment contract with RIMI to practice exclusively in Rhode Island. None of the evidence indicates that Dr. Brody has any contract to perform services or supply things in Massachusetts.
Finally, Dr. Brody did not cause tortious injury by mailing the report to Massachusetts. Even taking what the Plaintiff alleges as true, Dr. Brody’s alleged tortious conduct occurred in Rhode Island, where he evaluated the MRI scan and wrote the medical report, not in Massachusetts. See G.L.c. 223A, §3(c). The Plaintiff cannot establish jurisdiction over Dr. Brody in Massachusetts merely because the Plaintiff resides in Massachusetts and feels the effects of his injury in his home state. The consequences of medical care may be a constant companion throughout a patient’s lifetime, but jurisdiction does not follow the patient wherever he may travel. Harlow v. Children’s Hosp., 432 F.3d 50, 63 (1st Cir. 2005). The Harlow court went further to say, “that the reputation and expertise of an institution lead to referrals from out of state cannot be enough to establish specific jurisdiction.” Id.
For the reasons above, the Plaintiff fails to satisfy any applicable subsection of the Massachusetts longarm statute, G.L.c. 223A, §3(a)-(c). Therefore, jurisdiction is not authorized by statute and this court cannot assert specific jurisdiction over Dr. Brody
B. General Jurisdiction
The Plaintiff alternatively suggests that the court may exercise general jurisdiction over Dr. Brody. “General jurisdiction exists when the litigation is not directly founded on the defendant’s forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state.” United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992), citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 & n.9 (1984). General jurisdiction is recognized by the Commonwealth in the longarm statute as “causing tortious injury in this commonwealth by an act or omission outside this commonwealth if [the person] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.” G.L.c. 223A, §3(d). The court could exercise jurisdiction if the defendant engaged in purposeful and successful solicitation of business. See Tatro, 416 Mass. at 767.
Dr. Brody’s limited contacts with the Commonwealth, however, do not constitute regular solicitation of business or a persistent course of conduct. The Plaintiff points to the number of Dr. Brody’s patients from Massachusetts and the financial benefit he receives from physicians in Massachusetts who refer patients to him.[5] However, the Plaintiff fails to allege that Dr. Brody solicited patients from Massachusetts or engaged in any agreements with Massachusetts’ physicians to refer patients. Moreover, the physicians refer patients to the MRI/CT facility and not to Dr. Brody individually. Finally, the plain language of the statute requires revenue to be derived from “services rendered in this commonwealth.” G.L.c. 223A, §3(c). Dr. Brody performs his duties entirely in Rhode Island. Overall, the Plaintiff failed to provide evidence that Dr. Brody engaged in a persistent course of conduct or gained substantial revenue from Massachusetts and therefore, the Plaintiff has not met his burden for general jurisdiction either.
II. MRI/CTs Motion for Summary Judgment Due to Lack of Personal Jurisdiction
A motion for summary judgment should be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). The moving party must demonstrate that the absence of a triable issue entitles it to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). Once the moving party “establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The court reviews the evidence in the light most favorable to the non-moving party, but does not weigh evidence, assess credibility, or find facts. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
A. Specific Jurisdiction
As discussed above, the Plaintiff bears the burden to prove that MRI/CT has sufficient minimum contacts so that the exercise of personal jurisdiction in Massachusetts does not offend traditional notions of fair play and substantial justice. See Int’l Shoe Co., 326 U.S. at 316. Here, MRI/CT’s only contact with Massachusetts consists of Dr. Brody mailing the medical report on MRI/CT letterhead in response to the Plaintiff seeking treatment at MRI/CT’s Rhode Island facility. Since MRI/CT’s limited contact with the Commonwealth was a result of the actions of the Plaintiff and not its own purposeful activity, this court cannot exercise personal jurisdiction over MRI/CT. To hold otherwise would mean that MRI/CT avails itself of the benefits of other jurisdictions by merely allowing non-residents to seek care at its facility and forwarding medical documents to their treating physicians. Such a rul *608 ing would offend traditional notions of fair play and substantial justice. See Int’l Shoe Co., 326 U.S. at 316. Accordingly, as a matter of law, the Plaintiff has not established sufficient facts to satisfy the constitutional prong of personal jurisdiction.
Further, the Plaintiff must show that jurisdiction can be based on a provision of the Massachusetts longarm statute. G.L.c. 223A, §3. In this matter, the Plaintiff is unable to establish any of the statutory requirements for specific jurisdiction against MRI/CT, as explained above.
MRI/CT did not transact business in Massachusetts. G.L.c. 223A, §3(a). MRI/CT’s conduct took place in Rhode Island and MRI/CT does not operate in Massachusetts at all. Instead, the Plaintiff took purposeful action by crossing state lines to undergo an MRI at MRI/CT’s facility in Rhode Island. The MRI was scheduled, completed, and reviewed in Rhode Island. The only contact that the Plaintiff can point to with Massachusetts was Dr. Brody mailing his report on MRI/CT letterhead to the Plaintiffs treating physicians in Massachusetts. As discussed above, jurisdiction cannot be based on a single report being mailed to the forum state without the defendant taking some purposeful action to reach into the forum state.
Further, the Plaintiff cannot establish that MRI/CT contracted to supply services in the Commonwealth. G.L.c. 223A, §3(b). In fact, the only contracts established by the evidence are Dr. Brody’s employment contract with RIMI and RIMI’s contract to provide radiological services for MRI/CT, both exclusively at the MRI/CT facility in Rhode Island.
Finally, MRI/CT did not cause tortious injuiy by an act or omission in the commonwealth because all of its actions took place in Rhode Island, except for the mailing of a medical report. G.L.c. 223A, §3(c). Certainly mailing the report cannot be sufficient to establish jurisdiction when the action of mailing caused no injuiy. Simply because the Plaintiff resides in Massachusetts and felt the effects of his injuiy there does not make the injuiy occur in Massachusetts. See United States v. Swiss Am Nat’l Bank, 274 F.3d 610, 618 (1st Cir. 2001).
For the reasons above, the Plaintiff fails to satisfy any applicable subsection of G.L.c. 223A, §3. Therefore, jurisdiction is not authorized by statute or the Constitution and this court cannot assert jurisdiction.
B. General Jurisdiction
The Plaintiff alternatively suggests that the court may exercise general jurisdiction over MRI/CT but has not provided sufficient evidence to establish that MRI/CT “regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from . . . services rendered, in this commonwealth.” G.L.c. 223A, §3(d). Plaintiff points to MRI/CT having a significant number of patients from Massachusetts and receiving financial benefit from treating those patients referred by physicians in Massachusetts. There is, however, no evidence that MRI/CT solicited patients from Massachusetts or engaged in any agreements with physicians from Massachusetts to refer patients to MRI/CT. Indeed, the record before the court shows that non-residents come to Rhode Island for treatment and that MRI/CT does not provide services anywhere except in Rhode Island, thus, not fulfilling the plain language of the statute that the services must be rendered in the Commonwealth. G.L.c. 223A, §3(d).
ORDER
For the foregoing reasons, Dr. Brody’s Motion for Dismissal is ALLOWED and MRI/CT’s Motion for Summary Judgment is also ALLOWED.

When first named as Shields MRI & CT of Rhode Island, this party was under different ownership. The name has since changed and the facility is now named MRI/CT of Providence, LLC. This court will use this new name for the sake of accuracy.

The Plaintiffs arguments for jurisdiction on subsection (d) are discussed below. Subsections (e) through (h) are not applicable and are not addressed by the Plaintiff.

Plaintiffs reliance on Santos v. Kim, 429 Mass. 130 (1999), is misplaced. He attempts to use the case to persuade the court that a legal duty between radiologist and patient extends to the patient’s home state with his treating physician, carrying jurisdiction in its wake. Through this argument, Plaintiff is either misconstruing a legal duty between doctor and patient with continuing medical service or is claiming Dr. Brody caused an injuiy to the Plaintiffs treating physicians, the other defendants. Regardless, Santos was not discussing jurisdiction as to the court but, rather, jurisdiction of the medical malpractice tribunal pursuant to G.L.c. 231, §60B. There is no discussion of personal jurisdiction in that case nor is there any issue of tribunal jurisdiction before this court. Thus, Santos is irrelevant to the present matter.

Plaintiff also relies on Durette v. Int'l Screening Labs., Inc., 3 Mass. L. Rptr. 604 (1995), to show that Dr. Brody’s mailing of the report constituted purposeful action in Massachusetts. The court in Durette, however, distinguished between doctors, “who have essentially local practices [and] become involved in another state not as a result of their intention to do so, but rather as a result of the action of their out-of-state patients,” and a “doctor who has ‘purposefully directed’ his actions to the forum state by performing medical services through the mail for a patient in the forum state, Id. at 607, quoting Kennedy v. Freeman, 919 F.2d 126, 129 (10th Cir. 1990). The patients in Durette were tested in the forum state, the results of those tests were sent to the doctor in another state for analysis and the medical report was then returned to the treating physician in the forum state. Here, the Plaintiff was tested in Rhode Island; Dr. Brody evaluated that test in Rhode Island and then sent the medical report to Massachusetts.